*314 OPINION OF THE COURT
Glenn R. Morton, J.
The defendant was originally indicted for two counts of attempted manslaughter in the first degree arising out of a single criminal transaction involving the shooting of two separate individuals. Incident thereto, the defendant, with the consent of the People, pleaded guilty to two counts of attempted assault in the first degree as lesser included offenses, and the parties stipulated to a mitigation hearing pursuant to Penal Law § 70.02 (5) (b) to determine whether sufficient statutory circumstances existed as would permit the imposition of an alternative community-based sentence in lieu of an indeterminate State prison sentence. Subsequently, the matter duly came on for a hearing before this court on February 27, 1986 and was adjourned for the submission of the Grand Jury minutes and argument.
The public purpose of our penal philosophy is to provide an appropriate response to particular crimes, including consideration of the consequences to the victim and the community, and to ensure public safety through the deterrent influence of the sentence, rehabilitation of the offender and confinement when required in the interest of public protection (Penal Law § 1.05). As such, the sentencing process requires, on an individual basis, a delicate balance of the numerous factors relating not only to the nature of the crime and the particular circumstances of the offender, but also the four principal objectives of our penal sanctions involving deterrence, rehabilitation, retribution and isolation of the offender where necessary for community safety (People v Farrar, 52 NY2d 302). To combat a proliferation of crimes of violence involving the use of weapons, the Legislature recently has expressed specific policy concerns and enacted stiff sentencing and plea restrictions. To this effect, the Legislature has now provided that where a plea is permitted to a class D felony in satisfaction of an armed felony offense, the defendant must be sentenced to a State prison (Penal Law § 70.02 [5] [a]). However, the Legislature explicitly chose not to abolish all plea bargaining or judicial discretion where a State sentence would be inappropriate (People v Felix, 58 NY2d 156). Accordingly, the statute also permits a community-based sentence if the sentencing court finds that specific mitigating circumstances exist that bear directly upon the manner in which the crime was committed (Penal Law § 70.02 [5] [b]).
*315 Parenthetically, in this regard, it must be noted that at the time of the plea and mitigation hearing all parties were under the misapprehension that attempted manslaughter in the first degree constituted an armed felony offense. However, closer scrutiny reveals that it is not. The statutory definition of an "armed felony” requires either the use of a deadly weapon or displaying what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm be an element of the offense charged against the defendant. Accordingly, it is the actual legal definition of the offense which controls, and not whether a firearm happened to be used in the commission thereof (CPL 1.20 [41]). Neither the offense of manslaughter in the first degree or attempted manslaughter in the first degree has any such element in its definition (Penal Law §§ 110.00, 125.20). Accordingly, the law is clear that the original charge of attempted manslaughter in the first degree is not an armed felony offense (People v Gonzalez, 99 AD2d 1001), and no statutory restriction exists as to the type of sentence which must be imposed in the instant case (People v Pabellon, 108 AD2d 608). However, considering that the offenses here involved the use of a firearm under aggravating circumstances, it would appear in light of the strong legislative policy that the same criteria is equally applicable under the spirit of the law as a matter of judicial discretion.
The documentary proof submitted at the mitigation hearing consisted of a victim impact statement, a videotape of a victim offender reconciliation conference previously conducted on August 17, 1985, the presentence investigation normally prepared by the Probation Department, a transcript of the preliminary hearing held before the Batavia City Court, and the Grand Jury minutes. In addition the testimony of a minister, a psychiatric social worker, an alcohol counselor, the victim assistance officer, the defendant and the defendant’s father were received.
Essentially, the proof here is uncontroverted that the offense is serious involving the intentional shooting of two people with a .22 caliber semiautomatic rifle in the Village of LeRoy. The nature of the offense is further aggravated here in that it was committed in a sniper-like fashion using a telescopic sight in which the victims received life threatening injuries. However, the proof reflects that the offense was committed under bizarre circumstances across from a police station with little or no rational motive. The People do not oppose the defendant’s application for a community-based *316 sentence, and I find for the following reasons that the mitigating circumstances here are sufficiently unique as to permit the imposition of an alternative local sentence instead of a State prison term.
The Grand Jury minutes reveal that the defendant also shot himself twice in the head and received similar serious injuries. The language of the indictment alleges that both counts were committed under the influence of extreme emotional disturbance. Ordinarily such is an affirmative defense reducing the gravity of the crime from attempted murder to attempted manslaughter (Penal Law § 125.25 [1] [a]), which the defendant, and not the People, must prove to secure the benefit of the statutory mitigating defense (Penal Law § 25.00 [1]). However, the minutes show the Grand Jury itself was divided and refused to indict the defendant for attempted murder, even though it obviously resulted from the deliberate use of a deadly weapon. The People candidly have disclosed here that the language in the indictment relating to the defendant’s emotionally disturbed state at the time of the offense was included at the express direction of the Grand Jury. Considering such, and that the defendant did not testify before it, I find that the unsolicited extraneous conclusion by the Grand Jury as to the existence of extreme emotional influence is itself indicative of the exceptional nature of the mitigating circumstances involved.
The additional proof submitted here supports the Grand Jury conclusion. The defendant has no criminal history. At the time of the offense he was barely acquainted with one victim and only casually with the other. There had been no immediate contact between them and, at most, the proof would show a weak motive relating to certain misconceptions the defendant and one victim had over statements made to them by a mutual female acquaintance. The defendant was 18 years old at the time of the offense and had been a chronic abuser of a variety of drugs, mainly alcohol and marihuana, over the past five and one-half years. On the night of the offense, the defendant, with two others, consumed a quart of vodka and one ounce of marihuana during the last four hours; and immediately before, the defendant also consumed two "hits” of LSD. Based thereon, the defendant has no recollection of the actual events, and it does appear that an irrational act was involved.
The proof submitted here fails to reflect that the defendant has any psychotic mental illness and principally suffers from a *317 personality disorder. The documentary exhibits and testimony reveal an all too familiar pattern of emotional problems developing from family and social deprivation, which have been severely aggravated by inordinate alcohol and substance abuse. Following the offense, the defendant has participated in extensive personal, social and drug counseling. The expert proof submitted reflects that the defendant has made positive gains during the pretrial period and has remained drug free since December 3, 1984. Currently the expert proof reveals that the defendant, although a polydrug dependent person, does not constitute a community threat so long as he abstains from all mood altering drugs, including alcohol.
Given the pervasive exposure to criminal activity, the Legislature, commencing in 1984, also has established certain standards for the fair treatment of crime victims, which, inter alia, include that the victim and their families be consulted and their views obtained as to the suitability of sentencing alternatives such as community supervision (Executive Law § 642 [1]; CPL 390.30 [3] [b]; 390.50 [2] [b]). The victim impact statement submitted here adds a certain amount of sophistication to the legislative intent and provides some objective criteria for consideration as to the effect of the offense, rather than the usual subjective evaluation of the sentencing court.
Basically it appears that through an intensive type program, contact was made with each victim shortly after the offense, and their active intervention solicited. As a result thereof, the victims agreed on January 14, 1985 to participate in a pretrial diversion program designed to monitor and evaluate the defendant’s ongoing treatment for psychological problems and substance abuse for a minimum six-month period. Subsequently, on March 8 and 13, 1985, with the People’s consent, a previously scheduled suppression hearing was held in abeyance and the criminal proceedings adjourned periodically to November 22, 1985 to allow completion of the diversion program on a trial basis, together with interim progress reports. The culmination of this program now forms the nucleus of the victim impact statement and the basis for the particular plea agreement being submitted for consideration.
The victim impact statement includes here a videotape of a victim reconciliation conference conducted on August 17, 1985 approximating four hours in length. Parts one and two consist of a mediated face-to-face confrontation between the defendant and the two immediate victims involved, along with the *318 mother of one victim. Parts three and four consist of an additional confrontation between the same parties, along with other selected representatives of the LeRoy community from law enforcement, the clergy, governmental officials and the citizenry.
The first two parts show, as borne out by the testimony of the victim assistance officer, that both victims, although harboring a great deal of anger as to what happened to them, have from their own life-styles, a large amount of empathy with the defendant’s personal plight. A reconciliation was accomplished with one victim during the conference, and he is not opposed to a community-based sentence. The remaining victim continues in a state of reproachment, with strong feelings of anger and revenge. However, it would appear from the probation report that the actual character of the feelings may be adaptive; and at the conference, while supportive of her son, the victim’s mother expressed a less hostile attitude and was more receptive to a conciliatory process to eliminate the destructive nature of such feelings to his own future welfare.
Parts three and four relating to the community aspect fail to reveal a discernable sense of outrage; and indicate that a common community understanding exists as to a perceived correlation between the offense and drug abuse. For the most part, those participating were either directly or indirectly involved as a result of the offense in a small cohesive community, and are representative of the attitudes in the immediate area.
The victim impact statement also contains what purports to be a survey of the sentencing attitudes of some 31 other county residents based on a written poll containing a synopsis of the offense and available alternatives. The results would reflect of the 25 persons responding, 23 considered a local community-based sentence appropriate under similar circumstances. No proof as to the particular methodology utilized has been submitted in connection therewith which would permit this court to fairly access whether the survey constituted a representative sample of the extended community. However, considering that it coincides with the prosecutorial discretion exercised here, and is consistent with the narration of the events described by the proof, I find that it does represent a valid expression of community concern.
Considering such, together with the defendant’s remorseful *319 attitude, it appears that little purpose would be served here by extended confinement in a State prison for either rehabilitation purposes or to isolate the defendant from the community. Given the described circumstances and the availability of the intensive probation supervision program from the presentence report to closely monitor the defendant, these purposes would be more appropriately served by a community-type sentence. There does remain for consideration whether, for deterrence or retribution purposes, a State prison sentence is warranted. Experience in this area has established that lengthy incarceration is not cost effective to serve these specific purposes where community protection is not a controlling factor. As developed at the two victim reconciliation conferences, the community is supportive and, in the final analysis, no amount of punishment as a practical matter could adequately undo the harm to the actual victims. Significantly, at the community portion of the conference, an expression was made that a more realistic deterrent would be achieved if the defendant served as a living example as to the dangers of drug abuse through an education process. Accordingly, it is determined here that society would be better served by a community-based sentence with more limited incarceration on the defendant’s consent to perform 600 hours of community service designed to educate the public to the problems associated through drug abuse (cf. People v Whiting, 89 AD2d 694).