496 S.E.2d 221

**STATE of West Virginia, Plaintiff below, Appellee,**

v.

**Gary Michael LUCAS, Defendant below, Appellant.**

No. 23903.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1997.

Decided Nov. 20, 1997.

---

William C. Meyer, II, Public Defender Services, Princeton, for Appellant.

Darrell V. McGraw, Jr., Molly M. McGinley, Assistant Attorney General, for Appellee.

STARCHER, Justice:

The appellant, Gary Michael Lucas, was convicted of arson in the Circuit Court of Mercer County for burning down his Bluewell, West Virginia IGA grocery store. At the appellant's sentencing, the circuit court entered a restitution judgment order against the appellant on behalf of Aetna Casualty Company for $1,430,000.00 in insurance proceeds that Aetna paid as a result of the fire.

The appellant contends that the court's restitution order was improper because the appellant cannot repay such a large sum. The appellant also argues that Aetna is not a "victim" under our victim protection statute.

Because the circuit court's entry of a restitution judgment order does not in itself mean that the appellant will be penalized if he is unable to repay the amount of restitution established in the order—and because the insurance company was the victim in this case—we affirm the circuit court's order.

I.

*Facts and Background*

In the fall of 1992, the appellant, Gary Michael Lucas, bought an IGA grocery store in Bluewell, West Virginia from Mr. William Warden, who financed the purchase. In compliance with the purchase agreement, the appellant insured the grocery store with the Aetna Casualty Company ("Aetna"). The appellant had previously owned and operated

several grocery stores. His family had been in the grocery business for 40 years. The appellant said at trial that during 1993 he personally made about $120,000.00 from the Bluewell IGA business.

On July 3, 1994, the appellant's grocery store was destroyed by fire. Aetna subsequently paid out $1,430,000.00 in fire insurance proceeds. Most of the proceeds were applied to discharge the appellant's debt to Mr. Warden and other debts related to the business. The appellant stated at his trial that his "net" from the fire insurance proceeds was about $200,000.00.

On November 1, 1995, the appellant was convicted of first degree arson, a violation of *W.Va.Code*, 61-3-1 [1935].[1] The prosecution's position at the appellant's sentencing was that the appellant, as part of his sentence, should be ordered to pay to Aetna as victim restitution the full amount of the financial injury which the appellant had caused to Aetna. An attorney for Aetna addressed the court at the sentencing hearing, verifying the amount paid by Aetna. The appellant told the court at his sentencing that he was indigent, and that his wife was working at the Huntington Mall.

The circuit judge denied probation and sentenced the appellant to a two to 20 year term of incarceration, to run consecutively with a sentence that the appellant had received for violating federal drug laws. In sentencing the appellant, the circuit judge entered judgment against the appellant and on behalf of Aetna in the amount of $1,430,000.00 in restitution. The judge also ordered the appellant to sign over to Aetna a $121,000.00 certificate of deposit in the appellant's name which federal authorities were holding.[2]

At the sentencing hearing, the circuit court engaged in a dialogue with the appellant's counsel about the propriety of the amount of the restitution judgment order, and about whether ordering the appellant to sign over the certificate of deposit would allow Aetna to have a "double recovery." [3]

---

1. At his trial the appellant denied any involvement in the fire. The appellant's brother "turned State's evidence" and testified against the appellant. The jury believed his brother, and we accept their verdict.

2. The pertinent portion of the circuit court's sentencing order stated:

It is further Ordered that the Aetna Casualty Company is hereby given a judgment against the said Gary Michael Lucas in the amount of $1,430,000.00, and the Clerk of the Circuit Court is directed to issue an Abstract of Judgment on said amount and hand same to the Clerk of the County Court for the purpose of entering same upon the records of that Court. And it appearing to the Court that a Certificate of Deposit has been issued by Bank One to the Defendant in the amount of $121,000.00, No. 600-007626-C; that such Certificate is in the hands of the U.S. Government; that it has been represented that such Certificate would be made available as restitution to Aetna Casualty Company, it is Ordered that the Defendant shall endorse and assign his rights to the Certificate of Deposit, together with accrued interest, to Aetna Casualty Company.

3. Following is the pertinent language from the transcript of the appellant's sentencing hearing, edited slightly for readability:

THE COURT: With regard to restitution, the Court's going to direct a judgment for restitution in this matter, all subject to appeal, of 1.43 million dollars, and will direct that subject to approval by the U.S. Attorney's Office that he sign over the Hundred and Twenty Thousand Dollar CD to the Aetna Insurance Company; that they be entitled to have all that plus interest in reduction of the restitution there owed.

APPELLANT'S COUNSEL: Your Honor, I don't see how you can fairly much acknowledge that someone is indigent and has no money and then order restitution in the amount of 1.4 million dollars. Because, in essence, what you're doing is sentencing him to a life of indigency, and I think an order of restitution has to be based on a defendant's ability to pay.

THE COURT: I think the payment of it might, but not the judgment for the restitution. I certainly can't put him in jail at a later time if he's returned on parole if he doesn't pay the 1.4 million and if he doesn't have the ability to pay it.

APPELLANT'S COUNSEL: But a judgment of 1.4 million dollars accruing interest at the rate of ten percent per annum basically places him at the bottom of the pile and keeps him there with a foot on him forever.

THE COURT: We don't have a lot of cases where restitution is that high. I'm going to enter this and you can file a motion to reconsider, and if you find any cases or authorities, we can take that up in the future.

APPELLANT'S COUNSEL: Aetna says "if we get our Hundred and Twenty Thousand Dollars back we'll waive these other claims," but now they're going to get their Hundred and Twenty Thousand Dollars back and a judgment for 1.4 million dollars running at ten

In this dialogue, the court stated that if the appellant was indeed indigent, he could not be penalized for failure to pay the amount of restitution established in the judgment order. The judge also stated that the appellant was free to make further motions challenging the amount of the restitution order and/or the requirement of signing over the certificate of deposit. No such motions appear in the record.

The appellant appealed his conviction and his sentence, including the portion of the sentencing order entering judgment for Aetna for $1,430,000.00. We granted the petition for appeal, but only on the issue of the restitution ordered by the circuit court.

## II.

### *Discussion*

### A.

### *Standard of Review*

The Victim Protection Act of 1984 ("the Act"), *W.Va.Code*, 61–11A–1 through –8 codifies the principal statutory law of this state governing court-ordered restitution by a person convicted of a crime.[4] In the instant case, the circuit court entered a restitution judgment order against the appellant at the time of the appellant's sentencing. This action by the court is authorized by *W.Va.Code*, 61–11A–4(a) [1984], which states that a circuit court,

> . . . when sentencing a defendant convicted of a felony or misdemeanor causing physical, psychological or economic injury or loss to a victim, shall order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense. . . .

Thus a restitution order entered pursuant to this statutory provision is considered a component of sentencing.

■ The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands. *See State v. Head*, 198 W.Va. 298, 301, 480 S.E.2d 507, 510 (1996).

### B.

### *Was the Circuit Court's Restitution Order Improper?*

The appellant argues that the circuit court's entry of judgment against him in the total amount of Aetna's losses, $1,430,000.00, was improper. The appellant principally relies upon language from our cases requiring that the amount of restitution to be paid by an offender as a condition of probation or parole be reasonably tailored to an offender's ability to pay.

■ We discuss these cases later in this opinion, but we begin our consideration of the appellant's argument with a review of pertinent language from several sections of the Act.

*W.Va.Code*, 61–11A–1(b) [1984] states, in part:

> The legislature declares that the purposes of this article are to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process and to ensure that the state and local governments do all that is possible within the limits of available resources to assist victims and witnesses of crime without in-

---

percent, which is pretty good at having it both ways.

THE COURT: If you wish to bring on any motions regarding that the Court will certainly entertain that. At this point the Court is directing him to sign over that CD. If he wishes to refuse to do that and ask for a stay pending the appeal, I'll be happy to entertain a motion to that effect.

APPELLANT'S COUNSEL: I'll discuss it with Mr. Lucas first.

4. This Court recently stated in *State v. Whetzel*, 200 W.Va. 45, 48, 488 S.E.2d 45, 48 (1997), that the Act "enable[s] trial courts to require convicted criminals to pay all losses sustained by victims in the commission of the crime giving rise to the conviction."

We note that our opinion in the instant case is not applicable to restitution in juvenile cases.

fringing on the constitutional rights of the defendant.

*W.Va.Code*, 61–11A–4(a) [1984] states:

The court, when sentencing a defendant convicted of a felony or misdemeanor causing physical, psychological or economic injury or loss to a victim, shall order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense, unless the court finds restitution to be wholly or partially impractical as set forth in this article. If the court does not order restitution, or orders only partial restitution, under this section, the court shall state on the record the reasons therefor.

*W.Va.Code*, 61–11A–4(d) [1984] states:

The court shall impose an order of restitution to the extent that such order is as fair as possible to the victim and the imposition of such order will not unduly complicate or prolong the sentencing process.

*W.Va.Code*, 61–11A–5(a) [1984] states:

The court, in determining whether to order restitution under this article and in determining the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

*W.Va.Code*, 61–11A–5(d) [1984] states:

Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the prosecuting attorney. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and such defendant's dependents shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.

■ We will not burden the reader with an elaborate exegesis of the foregoing-quoted language from the Act, because (after analyzing one important phrase, which we do in a footnote [5]) we believe that the cumulative

---

5. A central phrase in the quoted statutory language is: "[t]he court *shall order* ... that the defendant make *restitution* to any victim of the offense, *unless* the court finds restitution to be wholly or partially *impractical as set forth in this article.*" *W.Va.Code*, 61–11A–4(a) [1984] (emphasis added).

We believe that this language, considered *in pari materia* with the other quoted statutory language, means that full restitution for a victim's eligible losses should be ordered, unless the circuit court determines that such an award is "impractical" *as set forth in* Article 11A, Chapter 61 (the Act).

What does Article 11A set forth as impractical? In addition to the directive quoted above from *W.Va.Code*, 61–11A–4(a) [1984], the Act uses the word "impractical" only twice. Both uses describe specific circumstances involving a restitution award to a victim.

The first instance is set forth in *W.Va.Code*, 61–11A–4(b)(1)(B) [1984], where a money award is authorized when the return of property to a victim is "impractical." The second instance is set forth in *W.Va.Code*, 61–11A–4(b)(4) [1984], where restitution by means of services or payment to a designated person or organization is authorized, if payment to a victim is "impractical."

Are these two circumstances the only ones under which a court may conclude that an award of full restitution is impractical? We do not think that this is the intent or the meaning of the statutory phrase, "impractical as set forth in this article," because such an interpretation would require us to ignore other important language in the statute.

That language is found in *W.Va.Code*, 61–11A–5(a) [1992], which requires a circuit court in all cases when considering restitution to:

... consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

The statute's directive that a court considering restitution must in all circumstances consider a defendant's financial circumstances can only mean that a court must in all circumstances consider, as part of its practicality determination, whether a defendant is able to make restitution without undue hardship.

"[I]mpractical as set forth in this article" therefore should be read to mean "impractical in light of the factors and considerations set forth in this article."

This is not a strained construction, and to read the statute otherwise would make the statutory

meaning of this language, read *in pari materia*, is clear. The above-quoted provisions of *W.Va.Code*, 61–11A–1 [1984], *W.Va.Code*, 61–11A–4(a) [1984], *W.Va.Code*, 61–11A–4(d) [1984], *W.Va.Code*, 61–11A–5(a) [1984] and *W.Va.Code*, 61–11A–5(d) [1984], read *in pari materia*, establish that at the time of a convicted criminal defendant's sentencing, a circuit court should ordinarily order the defendant to make full restitution to any victims of the crime who have suffered injuries, as defined and permitted by the statute,[6] unless the court determines that ordering such full restitution is impractical.

The question then arises, what does "impractical" mean, in the context of a restitution order? To address this question, we will first look at the term "impractical" as it is more generally used.[7]

This Court has recognized that the word "impractical" does not necessarily mean the same thing as "impossible." *See Dolin v. Roberts*, 173 W.Va. 443, 445, 317 S.E.2d 802, 804 (1984): "[Requiring license suspensions within twenty-four hours of drunk driving arrests] . . . would not only be impractical, it would be virtually impossible. . . ." *See also Stockert v. Council on World Service and Finance of Methodist Church*, 189 W.Va. 1, 2, 427 S.E.2d 236, 237 (1993). "The doctrine of *cy pres* is an equitable device employed when the terms of a charitable trust become

illegal, impossible, *or* impractical to fulfill . . . " (emphasis added).

Looking to other jurisdictions, in *LaCourse v. City of St. Paul*, 294 Minn. 338, 343, 200 N.W.2d 905, 909 (1972), the court said:

The word "impractical" does not necessarily mean "impossible." Webster's Third New International Dictionary (1961) p. 1136, defines "impractical" as synonymous with "impracticable." "(I)ncapable of being put into use or effect or of being accomplished or done successfully or without extreme trouble, hardship, or expense."

Another court has similarly distinguished "impractical" from "impossible" or "infeasible," stating that the fact that use of a safety device is feasible or possible does necessarily mean that the method is practical—and that practicality is "not theoretical or ideal . . . [but] implies proven success in meeting the actual demands made by actual living or use." *Century Steel Erectors, Inc. v. Dole*, 888 F.2d 1399, 1405 (D.C.Cir.1989).

Thus, whether a proposal is practical or impractical is not a simple yes-or-no factual determination of whether the proposal is technically feasible or within the theoretical realm of possibility. Rather, determining whether a proposal is practical or impractical involves considering and weighing probabilities, costs and benefits. If the costs substan-

---

language which requires a court setting restitution to in all cases consider a defendant's financial circumstances into a nullity. "In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syllabus Point 2, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

**6.** For offenses causing bodily injuries, only specific medical costs are eligible for a restitution award. "Although restitution for pain and suffering may be necessary and beneficial to the well being of the victim, a circuit court may not order this form of restitution under the Victim's Protection Act of 1994. The victim is not precluded, however, from filing an independent civil action to recover additional damages." *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 198–199, note 19, 465 S.E.2d 185, 198–199, note 19 (1995).

**7.** West Virginia statutes direct that consideration be given to whether an action is "impractical" in a number of circumstances: *W.Va.Code*, 3–2–

19(b)(2) [1994] (separate municipal precinct record books may be used only when election boundaries make the use of county precinct books impractical); *W.Va.Code*, 8–11–2 [1969] (ordinances may omit uniform guide for exercise of discretion if creating such a guide would be impractical); *W.Va.Code*, 22–3–13(b)(2) [1997] (post-mining land use change must not be impractical); *W.Va.Code*, 22–22–7(e) [1996] (remediation agreement time limit may be extended if 31–day limit becomes impractical); *W.Va.Code*, 54–1–5a [1982] (housing fund to condemn land only if other alternatives have been explored and found impractical); *W.Va.Code*, 22A–2–53a(5) [1986] (safety nets required where other safety devices are impractical); *W.Va.Code*, 46–2–614 [1963] (under the UCC, if a delivery method becomes commercially impractical, a commercially reasonable method may be substituted); *W.Va.Code*, 46–2–615 [1963] (delay in delivery is not a breach under the UCC if performance was impractical due to an unforeseen contingency).

tially outweigh the benefits when considered in light of the probabilities, a proposal may be deemed to be impractical, even if it is technically or theoretically possible or feasible.

What then are the factors that a court must and may consider in assessing the probabilities, costs and benefits—and thus the practicality—of an award of full restitution?

Again we turn first to the applicable statutory language. *W.Va.Code*, 61–11A–5(a) [1992] requires that:

> The court, in determining whether to order restitution under this article and in determining the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

Thus, the statute calls for consideration of (1) the victim's losses, (2) the defendant's financial circumstances, and (3) such other factors as the court may choose to consider.

The Act also states that the court should endeavor to be fair to the victim and at the same time not unduly complicate or prolong the sentencing. *W.Va.Code*, 61–11A–4(d) [1984]. Whether property may be returned to a victim or whether a monetary payment in lieu of return is necessary may also be a consideration. *W.Va.Code*, 61–11A–4 (b)(1)(B) [1984]. The court may also consider the alternatives of rendering services in lieu of payment, or making payment to a designated person or organization, if restitution payment to a victim is impractical. *W.Va.Code*, 61–11A–4(b)(4) [1984]. *See* note 5, *supra.*

We will primarily address the consideration to be given by the court to the factor of a defendant's circumstances in making a restitution determination—because the issue in the instant appeal is the appellant's contention that the circuit court ordered restitution against him without giving proper consideration to the appellant's financial circumstances.

A number of our cases have discussed what consideration a court should give to a criminal defendant's financial circumstances when considering victim restitution.

In *Fox v. State*, 176 W.Va. 677, 682, 347 S.E.2d 197, 202 (1986), this Court stated:

> [I]t is generally held that even in the absence of statute, the sentencing court may not order restitution without first inquiring into and determining on the record the offender's ability to pay.

We stated in *Fox* that a probationer's restitution payment is unreasonable "if it is beyond the offender's ability to pay without undue hardship to himself or his family." Syllabus Point 1, in part, *Fox, supra.* Payment causing undue hardship occurs when "after the deduction of the [payment] from a person's wages enough money [does not] remain to meet ordinary and necessary expenses with something left over for unforeseen expenses and some discretionary spending." *Cottrell v. Public Finance Corporation*, 163 W.Va. 310, 316, 256 S.E.2d 575, 580 (1979). To avoid undue hardship, the payment required must not be so much as to "make it impossible for the debtor to provide for the family." *Id.*

In another case, we stated that:

> A probation condition requiring repayment of costs and attorneys fees is constitutionally acceptable if it is tuned to the probationer's ability to pay without undue hardship and is subject to modification if his indigency persists or reoccurs ... Probation may not be revoked for failure to pay restitution, costs and attorneys fees unless the probationer's failure is contumacious ... A trial court seeking to revoke probation for failure to pay assessed costs or restitution must make findings of fact that indicate defendant's ability to pay, weighing available assets, income, attempts to find work, and reasonable family expenses.

Syllabus Points 1, 2 and 3, *Armstead v. Dale*, 170 W.Va. 319, 294 S.E.2d 122 (1982).

We have also held that the same principles apply in matters of parole, where "the trial court must consider the financial resources of the defendant, the defendant's ability to pay and the nature of the burden that the pay-

ment of such costs will impose upon the defendant." Syllabus Point 1, in part, *State v. Haught*, 179 W.Va. 557, 371 S.E.2d 54 (1988).[8]

■ Our cases have identified two primary reasons that the amount of restitution that an offender is required to pay should be reasonable and not impose undue hardship. Those reasons are: (1) to promote offender rehabilitation, and (2) to comply with the constitutional guarantees of due process and equal protection.

In discussing offender rehabilitation, we stated in *Fox, supra, quoting from other cases*, that:

"Restitution can aid an offender's rehabilitation by strengthening the individual's sense of responsibility. The probationer may learn to consider more carefully the consequences of his or her actions. One who successfully makes restitution should have a positive sense of having earned a fresh start and will have tangible evidence of his or her capacity to alter old behavior patterns and lead a law-abiding life. Conditioning probation on making restitution also protects the community's interest in having the victims of crime made whole."
. . .

Thus, "[r]estitution imposed in a proper case and in an appropriate manner may serve the salutary purpose of making a criminal understand that he has harmed not merely society in the abstract but also individual human beings, and that he has a responsibility to make them whole."
*Fox, supra*, 176 W.Va. at 681, 347 S.E.2d at 201–202 (citations omitted).[9]

We have observed that if restitution is set so high as to "place any person in the position of having no money for discretionary spending [it would] risk the destruction of incentive; a result beneficial to no one." *Cottrell, supra*, 163 W.Va. at 316–317, 256 S.E.2d at 580 (1979). "Where, however, the defendant is unable to pay restitution, the rehabilitative purpose of the probation condition is destroyed." *Fox, supra*, 176 W.Va. at 681, 347 S.E.2d at 202. In *Fox*, this Court agreed with the Arizona Supreme Court's statement that, "[c]onsideration of the defendant's ability to pay restitution is sound penology." *Fox*, 176 W.Va. at 681, 347 S.E.2d at 201, *quoting State v. Hawkins*, 134 Ariz. 403, 405, 656 P.2d 1264, 1266 (1982).

The second principal reason that this Court has identified as supporting the principle that restitution should be "tuned" or tailored to the financial ability of an offender is to assure compliance with the constitutional

---

8. The principle that payment of restitution which is made a condition of probation or parole must be within the ability of an offender to pay without undue hardship is essentially codified in the Act, at *W.Va.Code*, 61–11A–4(g) [1984], which states:

If such defendant is placed on probation or paroled under this article, any restitution ordered under this section shall be a condition of such probation or parole unless the court or parole board finds restitution to be wholly or partially impractical as set forth in this article. The court may revoke probation and the parole board may revoke parole if the defendant fails to comply with such order. In determining whether to revoke probation or parole, the court or parole board shall consider the defendant's employment status, earning ability, financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay.
In a similar context, where a defendant has received the services of a court-appointed attorney, *W.Va.Code*, 29–21–16(g)(2) [1990] states in part that:

The court shall not order a person to pay costs unless the person is able to pay without undue hardship. In determining the amount and method of repayment of costs, the court shall take account of the financial resources of the person, the person's ability to pay and the nature of the burden that payment of costs will impose.

9. Restitution in an appropriate case can promote the rehabilitation of both the perpetrators *and* the victims of criminal conduct. A notable development in our nation's criminal justice system is the emergence of hundreds of local "Victim Offender Reconciliation Programs" (or "VORPs"), which seek to further the goal of "restorative justice" through restitution and communication involving victims and offenders. *See* Fred Gay and Thomas Quinn, "Restorative Justice and Prosecution in the Twenty–First Century," *The Prosecutor*, September/October 1996; *see also* Mark William Bakker, "Repairing the Breach and Reconciling the Discordant: Mediation in the Criminal Justice System," 72 N.C.L.Rev. 1479 (1994). *Cf. People v. Mooney*, 133 Misc.2d 313, 506 N.Y.S.2d 991 (1986) (VORP results considered by court in fashioning sentencing order.)

requirements of due process and equal protection of the laws.

 When a person's failure to comply with a restitution order's payment requirements may result in incarceration, deprivation of property, or some other adverse legal consequence or penalty, the liberty or property interest involved demands a constitutionally adequate hearing and process; and a person may not be penalized for nonpayment of restitution unless the refusal to pay is contumacious. *See Fox, supra;* Syllabus Point 2, *Armstead v. Dale, supra.* Additionally, permitting restitution orders which require payment beyond a person's means could discriminate against poorer people, who would be penalized for nonpayment—as opposed to better-off people, who could afford to make payment and thus avoid a penalty. Thus the constitutional guarantee of equal protection of the laws is implicated. *State v. Haught,* 179 W.Va. at 562, 371 S.E.2d at 59.

To protect a defendant's constitutional rights, when a court orders a defendant to fulfill and comply with specific terms and conditions of restitution as a condition of parole or probation, this Court has held that a defendant's financial circumstances must be carefully considered and the amount of restitution to be paid by a defendant should not impose undue hardship. *Fox, supra;*[10] *see also Haught, supra.*

What if a defendant is indigent at the time of sentencing, or the defendant's ability to pay full restitution is questionable? Under such circumstances, may full restitution or restitution in excess of a defendant's likely future means *never* be ordered?

While this Court has apparently not previously addressed this issue, other courts have discussed the significance of a defendant's indigency or uncertain means at the time of sentencing.

In *United States v. Rogat,* 924 F.2d 983, 985–986 (10th Cir.1991), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991), discussing the federal Victim and Witness Protection Act ("VWPA"), 18 U.S.C. Secs. 3663–64,[11] the Court stated:

> Although a defendant's indigency is not a bar to restitution, *United States v. Sunrhodes,* 831 F.2d 1537, 1546 (10th Cir.1987), we will not uphold the district court's exercise of discretion absent any evidence the defendant is able to satisfy the restitution order, *United States v. Clark,* 901 F.2d 855, 857 (10th Cir.1990). In *Clark,* the district court ordered a defendant to pay $153,762 in restitution immediately. The only evidence of the defendant's financial condition was a presentence report indicating a negative monthly cash flow of $249. *Id.* Based on this evidence, we vacated the district court's order as an abuse of discretion. *Id.*
>
> A restitution order will be upheld if the evidence indicates a defendant has some assets or earning potential and thus possi-

**10.** Syllabus Point 4, *Fox v. State,* 176 W.Va. 677, 347 S.E.2d 197 (1986) states:

When the sentencing court believes that restitution may be an appropriate condition of probation, it should direct the probation officer to include in the presentence investigation and report information concerning such matters as the nature and extent of the loss caused by the offender, the portion of the loss attributable to him when there are co-defendants and the offender's financial condition and employment prospects. This information should be *dis*closed to the offender prior to sentencing and, at the sentencing hearing, the court should invite the offender to comment upon the presentence report and to state whether he will be able to pay restitution. The offender then has the burden of advising the court of any inaccuracies in the presentence report or of any reason that he would be unable to make restitution, presenting such evidence as the court, in

its discretion, may deem relevant. After all the evidence is heard, it is incumbent on the sentencing court to enter in the record findings of fact supporting its decision as to the propriety, amount and method of paying restitution.

These requirements are echoed in the provisions of the Act.

Similarly, if a restitution order is made as part of a parole order pursuant to *W.Va.Code,* 61–11A–4(g) [1984], at the time of parole the court or the parole board must examine the offender's circumstances, including employment status, earning ability, and financial resources, and makes appropriate findings. *See* note 8, *supra.*

**11.** The federal Victim and Witness Protection Act ("VWPA"), 18 U.S.C. Secs. 3663–64 is similar in some respects to the West Virginia Victim Protection Act, but it is not identical.

bly may be able to pay the amount ordered. The Fifth Circuit, for example, affirmed a $250 per week restitution order against an electrician with a present earning ability of $500 per week because he had a "viable trade and good employment prospects." *United States v. Paden,* 908 F.2d 1229, 1237 (5th Cir.1990). In *United States v. McClellan,* 868 F.2d 210, 213 (7th Cir.1989), the Seventh Circuit upheld a restitution order of over $650,000 against a physician who, despite his current bankruptcy and low income, had "tremendous earning potential."

The possibility of repayment, however, cannot be based solely on chance. For example, in vacating a restitution order in *United States v. Mitchell,* 893 F.2d 935, 936 n. 1 (8th Cir.1990), the Eighth Circuit rejected the prosecutor's argument that the defendant might win the lottery. Similarly, the Seventh Circuit vacated an order requiring an indigent farmer to repay $32,-600 by the date he was scheduled to be released from prison because he could not raise that amount while in prison. *United States v. Studley,* 892 F.2d 518, 532–33 (7th Cir.1989). *But cf. United States v. Ryan,* 874 F.2d 1052, 1054 (5th Cir.) (restitution order of over two million dollars payable within five years of release from prison upheld because "defendant's financial situation may well change in the future, making him able to pay some if not all the restitution"), *cert. denied,* 489 U.S. 1019, 109 S.Ct. 1138, 103 L.Ed.2d 199 (1989).

The record in this case supports the district court's restitution order.... Balanced against the appellants' current indigency, the court found "the defendants both very able, intelligent, well-educated, talented business people, who do have substantial capacity to earn money now or in the future, and, therefore, do have ability to make restitution." ... the district

judge did not abuse his discretion in ordering full restitution. The record here satisfies the requirement in *Clark* of some evidence the appellants can satisfy the order. *See Clark,* 901 F.2d at 855. Also, the order does not require immediate payment as in *Clark. See id.* Nor does it require payment before the appellants leave prison as in *Studley. See Studley,* 892 F.2d at 531 n. 11. This case most closely resembles *Paden* and *McClellan,* because the appellants have demonstrated a significant earning capacity. *See Paden,* 908 F.2d at 1237; *McClellan,* 868 F.2d at 213.

■ We agree with the proposition set out in *Rogat* to the effect that there can be circumstances in which an offender's present indigency or questionable ability to pay a given amount of restitution does not render a restitution award in such an amount necessarily impractical.

For example, a defendant may at the time of sentencing have no funds that would justify a circuit court's concluding that the defendant will definitely be able to pay restitution under the defendant's then-existing circumstances. Nevertheless, the court might conclude from evidence in the record that there is a reasonable possibility that such means or ability would arise in the future—for example, from a defendant's future earnings, a prospective inheritance, or other possible improvement in a defendant's fortunes.

If a circuit court believed that there would be no significant harm to an offender's rehabilitation prospects and no constitutional violation would flow from the entry of a restitution award in excess of a defendant's current ability to pay, the court might reasonably determine that on balance an order entering judgment for a given amount of restitution was practical—because there is a reasonable chance that the restitution judgment order might in the future assist a victim in being compensated for their losses.[12]

12. *W.Va.Code,* 61–11A–4(h) [1984] states that a restitution order entered pursuant to the Act is enforceable as if it were a civil judgment. We stated in *State v. Short,* 177 W.Va. 1, 2, 350 S.E.2d 1, 2 (1986) that the Act gives the state broader powers to require restitution from offenders than existed prior to the Act's enactment in 1984, "including the ability to enforce an

order of restitution beyond the period of probation in the same manner as a civil judgment."

We have also stated that the Act "was not intended to supplant civil causes of action, but rather to supplement them," and an award under the Act is not a bar to a civil suit related to the same injuries. Syllabus Point 3, *Moran v. Reed,*

Conversely, a circuit court might in another case determine that ordering full restitution is impractical, because there is no reasonable prospect of a defendant ever having the ability to make full restitution to the victims of an offense. In other cases, a court might conclude that ordering full restitution is impractical because it is outweighed by offender rehabilitation concerns. Of course, in all such cases where full restitution is not ordered, the circuit court is required to state its reasons for determining to award less than full restitution. *W.Va.Code*, 61–11A–4(a) [1984].[13]

■ Based on the foregoing reasoning, we conclude that under the Victim Protection Act of 1984, *W.Va.Code*, 61–11A–1 through –8 and the principles established in our criminal sentencing jurisprudence, the circuit

---

175 W.Va. 698, 701, 338 S.E.2d 175, 178 (1985). "The victim is not precluded, however, from filing an independent civil action to recover additional damages." *State ex rel. Brewer v. Starcher,* 195 W.Va. 185, 198–199 note 19, 465 S.E.2d 185, 198–199 note 19 (1995).

It is notable that as a result of legislation like the Act and the federal VWPA, the historically discretionary and ancillary restitution component of criminal sentencing has been brought into a more imperative and prominent position, and courts are increasingly drawn into a hybrid civil-criminal arena. *See* Project, *Congress Opens a Pandora's Box—the Restitution Provisions of the Victim and Witness Protection Act of 1982,* 52 Fordham L.Rev. 507 (1984); *see also United States v. Bruchey,* 810 F.2d 456, 461 (4th Cir. 1987) ("Criminal restitution rests with one foot in the world of criminal procedure and sentencing and the other in civil procedure and remedy ... [victim protection laws] can be expected to generate substantial litigation as judges attempt to accommodate the two often irreconcilably different systems.")

The tension that may arise between criminal and civil systems in the restitution area can be seen in the hypothetical case of a defendant who is convicted of a criminal traffic offense in connection with an automobile accident involving another vehicle—and the driver of the other vehicle is not criminally charged. Criminal restitution procedures that ordered the payment of restitution damages to the non-charged driver as the "victim" in such a case would be quite different from the procedures customarily used to determine liability and damages in civil cases. In the restitution context, what becomes of the right to discovery, to jury determination of damages, or to comparative fault—to mention only a few issues?

In *Fox,* we recognized that the procedure customarily used in a criminal case to establish in a constitutionally adequate fashion the duty and amount of restitution as a condition of probation was a "summary" proceeding. We emphasized that "restitution is not a substitute for a civil action for damages." *Fox,* 176 W.Va. at 683, note 6, 347 S.E.2d at 203, note 6.

Because the procedures used to establish restitution in a criminal case substantially vary from the procedures ordinarily used in determining civil liability and damages, we are unwilling to leave the impression that we have concluded that, despite the language of *W.Va.Code,* 61–11A–

4(h) [1984], a restitution judgment order is for all purposes and in all respects the same as an ordinary civil judgment.

Additionally, by our endorsement in this opinion of the entry of a full restitution judgment order at the time of a defendant's sentence when a circuit court determines that such an order is not impractical, despite the defendant's apparent current inability to pay the restitution ordered, we do not express any opinion as to whether such a restitution judgment order could be subsequently subject to modification.

We do note that in the context of probation, we have held that "[a] probation condition requiring repayment of costs and attorneys fees is constitutionally acceptable if it is tuned to the probationer's ability to pay without undue hardship *and is subject to modification if his indigency persists or reoccurs. W.Va.Code,* 62–12–9." Syllabus Point 1, *Armstead v. Dale,* 170 W.Va. 319, 294 S.E.2d 122 (1982) (emphasis added). "[T]he court may impose, *subject to modification at any time,* any other conditions which it may deem advisable, including, but not limited to, any of the following: (1) That he shall make restitution or reparation, in whole or in part, immediately or within the period of probation, to any party injured by the crime for which he has been convicted." *W.Va.Code,* 62–12–9(b)(1) [1994] (emphasis added).

The instant case does not present facts or claims which require that we go further in addressing these issues, nor do we express any opinion on these matters. No one is attempting to execute on the restitution judgment order entered against the appellant, or to impose it upon him as a condition of parole. Moreover, the appellant does not contend that he was deprived of any opportunity to present arguments or evidence to reduce his liability or the amount of damages he has caused. In fact, the circuit judge invited the appellant to file additional motions to address the amount of restitution, which he did not do.

**13.** It is clear that the many factors which may be relevant to a court's determination regarding restitution at a criminal sentencing make it difficult, if not impossible, to fully delineate specific guidelines for assessing the practicality of an award of restitution in a given case—which is why the circuit court is afforded substantial discretion in this area.

court's discretion in addressing the issue of restitution to crime victims at the time of a criminal defendant's sentencing is to be guided by a presumption in favor of an award of full restitution to victims, unless the circuit court determines by a preponderance of the evidence that full restitution is impractical, after consideration of all of the pertinent circumstances, including the losses of any victims, the financial circumstances of the defendant and the defendant's family, the rehabilitative consequences to the defendant and any victims, and such other factors as the court may consider.

■ For purposes of determining whether or what amount of restitution may be entered as a judgment against a defendant at the time of a criminal defendant's sentencing pursuant to *W.Va.Code*, 61–11A–4(a) [1984], the indigency of a defendant or the current ability or inability of a defendant to pay a given amount of restitution is not necessarily determinative or controlling as to the practicality of an award of restitution. If the court determines that there is a reasonable possibility that a defendant may be able to pay an amount of restitution, the court upon consideration and weighing of all pertinent circumstances is permitted but not required to determine that an award of restitution in such an amount is practical.

■ However, when a court is determining the practicality of an award of restitution, a finding that there is a reasonable possibility of a defendant's payment of a restitution award must not be based solely on chance; there must be some concrete evidence specific to a defendant showing that the defendant has assets, earning potential or other present or potential resource, or similar grounds upon which the court may conclude that there is a reasonable chance that the defendant may be able to pay the restitution amount in question.[14]

■ We apply the foregoing reasoning and principles to the facts of the instant case. Aetna paid out $1,430,000.00 because of the appellant's criminal acts, and there is a presumption of an order of full restitution at the appellant's sentencing unless under all of the circumstances the court determines that such an award is impractical.

Looking to the appellant's financial circumstances, the record shows that he was a well-to-do businessperson who prior to his offense had earned an annual income of over $100,000.00. He had worked in the grocery business for 20 years, and he comes from a family that has been in the grocery business for over 40 years. He has engaged in large-scale business enterprises and financial transactions.[15]

The record thus contains evidence that the appellant might have the wherewithal in the future to pay restitution for some or all of the losses which he caused.[16] Applying the test which we have enunciated, a full restitution award is not barred (but also is not required) when such evidence exists.

As to rehabilitative and constitutional concerns which might weigh in favor of finding an award of full restitution to be impractical, the appellant's counsel succinctly summarized these at the sentencing hearing, saying: "What you're doing is sentencing him to a life of indigency, and I think an order of restitution has to be based on a defendant's ability to pay."

However, payment of $1,430,000.00 in restitution was not imposed upon the appellant as a condition of probation or parole—nor were any other potential penalties tied to the appellant's failure to make restitution in the amount ordered. Indeed, the circuit judge

14. "Clearly, the prevailing view is that ... a policy of full restitution in all cases, perhaps under the theory that even a destitute offender might win the state lottery, would be unreasonable." Alan T. Harland, "Monetary Remedies for the Victims of Crime: Assessing the Role of the Criminal Courts," 30 U.C.L.A.L.Rev. 52, 91 (1982).

15. The appellant's wife testified at his trial that she and the appellant, apparently through a corporation, owned another grocery store in Branchland, West Virginia. The record is silent as to the status of this store at the time of the appellant's sentencing.

16. The parties do not discuss in their briefs the court's requirement that the defendant sign over the $121,000.00 certificate of deposit which was in the hands of federal authorities. We assume that if this was done, this payment reduced the $1,430,000.00 restitution judgment.

stated in entering the judgment that if the appellant were to fail to pay the restitution awarded in the judgment order due to financial inability, the appellant could not be penalized for such failure.

The "life of indigency" forecast by the appellant's counsel, which if true might be a serious rehabilitative factor weighing against an award of full restitution, was entirely speculative at the stage of the appellant's sentencing—because no payment conditions had been imposed on the appellant in connection with parole, for example—and because no execution had been sought upon the judgment. For the same reasons, the principles established in our cases requiring that for constitutional reasons restitution must be tailored to the offender's ability to pay are largely inapplicable to the judgment order in question in the instant case.

In summary, we do not believe that rehabilitative and constitutional concerns were so weighty as to preclude entering a full restitution judgment against the appellant. Under these circumstances, we conclude that the circuit court did not abuse its discretion in entering judgment against the appellant for $1,430,000.00 in restitution, because such a judgment was not clearly impractical in light of the circumstances before the court.

The appellant also contends that the restitution order is impermissible because it lacks specific findings about the appellant's financial circumstances.

The applicable statutory language, *W.Va. Code*, 61–11A–4(a) [1984] requires findings only if the court does not award full restitution: "[i]f the court does not order restitution, or orders only partial restitution, under this section, the court shall state on the record the reasons therefor." As we have discussed, the rehabilitative and constitutional principles that have led us to require findings in the absence of a statutory command are not strongly implicated in the instant case. *See Fox, supra.*

Other courts addressing the findings issue in the light of similar statutory language have reached varying conclusions as to whether specific findings are required in all instances when a court is setting restitution in criminal cases.

One view does not require specific findings in all cases. An example of this approach is found in *United States v. Mitchell,* 876 F.2d 1178,1183 (5th Cir.1989):

> [United States Code Section] 3663(a)(2) states that "[i]f the court does not order restitution, or orders only partial restitution ... the court shall state on the record the reasons therefore." The statute does not require that the court state its reasons if full restitution is ordered. Further, as we stated in *United States v. Patterson,* 837 F.2d 182, 183–84 (5th Cir.1988):
>
>> We are not persuaded that the district court must spread its findings and conclusions on the record in every case in which full restitution is ordered. The decision to assign reasons is committed to the sound discretion of the district court, guided by this singular inquiry— absent an assignment of its reasons, does the record contain sufficient data for the appellate court to perform its mandated review? If the record provides an adequate basis for that review, the court need not assign specific reasons for its decision to order full restitution. If the record is insufficient, reasons must be assigned.
>
> In this case the presentence report, which is a part of the record, sets forth the specific findings as to each victim's damages. Under these circumstances the court need not make those findings on the record.

*Mitchell,* 876 F.2d at 1183.

An alternative view to the one stated in *Mitchell* is taken by the Fourth Circuit. That court requires specific findings on the record regarding each matter which the court considers in setting a restitution amount, in every case in which restitution is ordered. *United States v. Molen,* 9 F.3d 1084, 1086 (4th Cir.1993). In the Fourth Circuit, this rule is imposed on the district courts not because of statutory language requiring findings, but by virtue of the appellate court's inherent supervisory powers to establish procedures which permit efficient

and effective appellate review of the sentencing process. *Id.*

We might agree with the reasoning of the Fourth Circuit for those cases in which the restitution award in question imposes specific payment responsibilities upon a defendant or penalizes the defendant if the restitution order is not complied with—which appears to be the case for restitution orders issued under the federal VWPA. In such a case, the rehabilitative and constitutional concerns that we have recognized would require findings, and our cases have so held. *See, e.g., Fox, supra and Haught, supra.*

However, no such payment responsibilities or penalties flow from the restitution judgment order at issue in the instant case. We therefore adopt the reasoning of the court in *Mitchell,* based on our statutory language requiring findings only when less than full restitution is ordered at the time of sentencing. *W.Va.Code,* 61–11A–4(a) [1984].

■ Therefore we hold that when restitution is ordered at a criminal defendant's sentencing pursuant to the provisions of *W.Va. Code,* 61–11A–4(a) [1984], the circuit court is not required to spread its findings and conclusions on the record in every case in which full restitution is ordered. In cases where full restitution is ordered and where noncompliance with the restitution order will not in itself yield a potential penalty, the decision whether to make findings and assign reasons is committed to the sound discretion of the circuit court. If the record contains sufficient data for the Supreme Court of Appeals to review the basis of the circuit court's order, the court need not assign specific reasons for its decision to order full restitution. However, if the record is insufficient, if potential penalties will be triggered by the defendant's failure to pay the restitution which has been ordered, or if less than full restitution is ordered, the court must make appropriate findings and conclusions regarding the matters which it has considered, including but not limited to the losses sustained by any victims, the financial resources and earning ability of the defendant and the defendant's dependents, and the tailoring of the amount of restitution which a defendant must pay to the defendant's means and circumstances.

■ However, to facilitate appellate review and maximize the likelihood of well-reasoned decision-making, in all cases when restitution is ordered pursuant to *W.Va.Code,* 61–11A–1 *et seq.* and particularly when large sums are involved, a circuit court is well advised to exercise its discretion and make full findings and conclusions regarding restitution, even when such findings are not required.

For the foregoing reasons, we conclude that the appellant's assignment of error as to the adequacy and amount of the restitution order is without merit.

## C.

### *Was the Insurance Company a Victim?*

■ The Act does not define the word "victim," except for purposes of the specific section which permits victims to make statements at the time of a convicted person's sentencing, *W.Va.Code,* 61–11A–2 [1984]:

(a) For the purposes of this section, "victim" means a person who is a victim of a felony, the fiduciary of a deceased victim's estate or a member of a deceased victim's immediate family.

This definition is unenlightening, because it merely allows a deceased victim's representative to act in the victim's stead.[17]

The appellant contends that Aetna was not the actual victim in this case, and that Mr. Warden, who held the mortgage on the burned grocery store, was the real victim. Aetna, says the appellant, is merely a company which compensated Mr. Warden for his loss.

We disagree. Aetna is the entity from which the appellant intended to and did in

---

17. Lacking any statutory definition of the term "victim," we must approach with some caution the question of whether a particular individual or entity may be awarded restitution under the Act. This caution comes from our perception that the direct and indirect effects of traumatic criminal acts can be widespread and severe. Where to draw the line of eligibility for restitution may be a difficult determination in some cases. However, this is not such a case.

fact *obtain money and other benefit* (the discharge of the appellant's indebtedness)— by committing the criminal act of arson.

■ We conclude that where a criminal defendant intends to and does obtain money or other benefit from an insurance company by committing a criminal act of arson, the insurance company is a direct victim of the crime and is eligible for restitution under the provisions of *W.Va.Code*, 61–11A–4(a) [1984]. *See Commonwealth v. Layhue*, 455 Pa.Super. 89, 91–95, 687 A.2d 382, 383–84 (1996) (deciding that when the insurance company is the intended victim of the crime, a restitution award in favor of the insurance company is permissible).

This assignment of error is therefore also without merit.

### IV.

*Conclusion*

The judgment of the Circuit Court of Mercer County is affirmed.

Affirmed.