GRITT, JUDGE:
An application of the claimant, TAPCO Underwriters (TAPCO), for an award under the West Virginia Crime Victims Compensation Act, was filed May 21, 2001. The report of the Claim Investigator, filed June 8, 2001, recommended that no award be granted, to which the claimant timely objected. An Order was issued on July 11, 2001, confirming the Investigator's recommendation, in response to which the claimant's request for hearing was filed August 1, 2001. This matter came on for hearing on September 21, 2001, ex parte, the claimant appearing by counsel, Brian Casto, and the State of West Virginia, having been represented by counsel, Joy M. Bolling, Assistant Attorney General.
The claimant, an insurance company, claims to have been the victim of criminal conduct on or about September 20, 2000, in Summersville, Nicholas County. T his c laim a rises o ut o f t he c riminal c onduct o f o ne o r m ore u nknown arsonists. T he c laimant insured property owned by John and Brenda Johnson in Summersville, Nicholas County. The Johnsons purchased the property at issue in 1994, and purchased an annually renewable policy with TAPCO through the Ramsay Insurance Agency. The building was divided into a business section called the Pioneer Inn and an apartment section where Mr. Pritt, an employee and friend of the Johnsons, lived. At approximately 4:47 a.m. on September 20, 2000, Mr. Pritt was awakened by a series of loud noises. He went to investigate the source of the noises and discovered a large fire blazing in the upper business level of the building. The fire department responded and extinguished the fire, but the building was a total loss.
There were two investigations involved in this loss. First, the claims investigator for the claimant, employed Casto Investigations to perform one. The second investigation was performed by Roger York, an Assistant State Fire Marshal. Both independent investigations led to the same conclusion that the cause of the fire was incendiary in nature and that the fire was intentionally caused by an unknown person or persons. This act constitutes the crime of arson under W.Va. Code §61-3-5 The person or persons who committed this act have not been apprehended as of this date.
*492 By Order issued My 11, 2001, this claim was denied on the basis that the claimant was not a “victim” and that it did not suffer a “personal injury” as defined under W.Va. Code §14-2A-3(a). Furthermore, the Order stated that a ruling which would, in effect, indemnify insurance companies, would be contrary to the purpose of the crime victim compensation statute. Nothing adduced at the hearing on September 21,2001, convinces this Court to rule otherwise.
It is clear that TAPCO, although not a “natural person”, may be a “victim” of a crime under W.Va. Code §61-11A-4, West Virginia’s Victim Protection Act. The West Virginia Supreme Court held in State v. Lucas that an insurance company can be a “direct victim” of a crime and is eligible for restitution under West Virginia’s Victim Protection Act. 201 W.Va. 271, 496 S.E.2d 221 (1997). In the present claim, it is evident that TAPCO is the victim of the crime of arson and may be entitled to restitution under W.Va. §61-11A-4.
However, W.Va. Code §61-11 A-4 differs from W.Va. Code §14-2A-3(k) in the definition of who may be a “victim”. W.Va. Code §14-2A-3(k) defines “victim” in part as “a person who suffers personal injury or death” as a result of criminally injurious conduct.
This language is very specific, and the Legislature has made it clear that the Crime Victims Compensation Act was intended to apply only to conduct which causes or poses a substantial threat of injury or death to a “person,” meaning the physical body and/or mind of an individual. The purpose and intent of the Legislature in creating the Crime Victims Compensation Act is set forth under W.Va. Code §14-2A-2, which defines who qualifies as a “claimant” and specifically includes the spouse and dependents of individuals who are victims of criminal conduct. These definitions demonstrate the intent of the Legislature to make awards to natural persons who suffer personal injury or death and to their dependents that suffer emotional trauma and/or economic loss as a result of the death of the primary income earner in the family structure. Insurance companies are not included in any of these definitions. The only section of the statute that mentions insurance deals with the collateral sources which are to be deducted from any award. Since the Legislature specifically lists insurance companies in regard to collateral sources and does not include insurance companies as “claimants,” it is reasonable to infer that had the Legislature intended to include insurance companies as “claimants,” it would have done so. This language, as well as the overall reading of the statute, demonstrates that the intent of the Legislature was to provide compensation to natural persons who suffer injuries to their bodies and/or minds, and to provide limited economic assistance to their dependents when appropriate.
The Court also must take notice that the claimant did not and cannot cite any crime victim compensation statute nor any case law interpreting such statutes in the United States which provide any award to insurance companies under any circumstances.
*493 This claim is a companion claim to one filed by American National Property & Casualty Company (CV-01-113), which suffered an economic loss due to insurance fraud. The Court makes note of the fact that, although neither party in these claims qualifies as a “claimant” under the Crime Victims Compensation Act, arson as compared to fraud is a risk which an insurance carrier can and does take into account in establishing premiums. Insurance fraud is much more difficult, if not impossible, to predict, to rate, and to take into account in establishing premiums.
The Court is constrained by the law and the evidence to stand by its previous ruling; therefore, this claim must be and the same is hereby denied.