685 S.E.2d 701

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Richard BOOTH, Defendant Below, Appellant.**

**No. 34711.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 6, 2009.

Decided Oct. 29, 2009.

---

Thomas Moore, Assistant Public Defender, First Judicial Circuit Public Defender Corp., Wheeling, WV, for the Appellant, Richard Booth.

Scott R. Smith, Ohio County Prosecuting, Attorney Stephen L. Vogrin, Assistant Prosecuting Attorney, Wheeling, WV, for the Appellee, State of West Virginia.

PER CURIAM:

The defendant below and appellant herein, Richard "Ricky" Booth (hereinafter "Mr. Booth"), appeals from an order entered May 23, 2008, by the Circuit Court of Ohio County. By that order, the circuit court sentenced Mr. Booth to a period of eighty years in the penitentiary following Mr. Booth's guilty plea to the felony offense of first degree robbery. On appeal to this Court, Mr. Booth argues that the sentence violates both state and federal constitutional law because the time period is impermissibly harsh and disproportionate to the crime committed. Based upon the parties' arguments, the record designated for our consideration, and the pertinent authorities, we affirm the sentencing decision by the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The relevant facts of the case are largely undisputed. On March 21, 2007, Mr. Booth, along with three other people,[1] drove to Wheeling, West Virginia. Mr. Booth was twenty years of age at the time. Mr. Booth asserts that the trip was for the purpose of looking for employment. However, Mr. Booth concedes that he had ingested approximately twenty-five Xanax pills that morning

---

1. The three other people were Jessica Wood, Jennifer Jordan, and a seventeen-year-old juvenile male.

and that he was also in an altered state from smoking marijuana. Upon arriving in Wheeling, the foursome embarked in a plan to obtain money so that they could purchase more illegal drugs. They attempted to sell fake crack; however, they were unable to find anyone to buy the fake drugs. The group then decided that they would steal money to support their drug needs.

Ms. Linda Carney, an elderly woman walking with a cane, was spotted. Mr. Booth followed Ms. Carney to her apartment and attempted to gain access to her apartment on at least three separate occasions under the auspices of needing help with a car repair, needing to use the telephone, and needing a drink of water. Ms. Carney was suspicious, however, and denied him entry.[2] Mr. Booth returned to the group in the car. They proceeded to drive the streets of Wheeling until Ms. Wood spotted Mrs. Doris Schafer, along with her husband, on the street outside of a restaurant. Upon spotting Mrs. Schafer and her husband on the sidewalk, Mr. Booth and the juvenile male exited the car and followed Mrs. Schafer down the street. Mr. Booth approached Mrs. Schafer from behind and grabbed her purse in an attempt to pull it off of her shoulder. In the process, Mrs. Schafer fell to the ground screaming as she clutched her purse. Mr. Booth released the purse, and both he and the juvenile male ran back to the vehicle.

An onlooker witnessed the event and provided the authorities with the car's license plate number, which resulted in all of the occupants' arrest. Mr. Booth was charged with two counts of attempted first degree robbery, assault in the commission of a felony, and conspiracy to commit robbery. On June 8, 2007, Mr. Booth entered into a plea agreement with the State wherein he agreed to plead guilty to one count of first degree robbery[3] in exchange for the dismissal of the remaining counts. In the plea agreement, the State agreed not to seek a longer sentence than what would be recommended in the pre-sentence investigation report prepared by the probation officer. The lower court accepted the guilty plea and ordered a pre-sentence investigation report.

In the pre-sentence investigation report, the probation officer recommended a sentence of eighty years. Further, the probation officer discouraged the use of alternative sentencing practices such as home incarceration or probation due to the violent and serious nature of this particular crime.[4] The pre-sentence investigation report justified the length of the recommended sentence by analyzing the specifics of this case. First, the report reasoned that Mr. Booth's crime essentially had two victims: Mrs. Schafer and her ill husband. Mrs. Schafer, prior to the crime, provided the primary care for her infirm husband, and he was present at the scene of the crime but was unable to aid his wife due to his poor physical health.

Second, the report recognized that Mrs. Schafer was seriously injured as a result of the crime. At the time of the incident, Mrs. Schafer was eighty-two years old and in good

---

2. Ms. Carney also telephoned the authorities to report her suspicions.

3. The relevant portion of the charging statute states as follows:
> (a) Any person who commits or attempts to commit robbery by: (1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years.

W. Va.Code § 61–2–12(a) (2000) (Repl. Vol. 2005).

4. Mr. Booth makes the argument that the pre-sentence investigation report inaccurately referred to him as a "violent repeat offender." However, the pre-sentence investigation report actually refers to Mr. Booth as a "violent and repeat offender." The lower court had occasion to ask the probation officer about this classification during the sentencing hearing. During that hearing, the probation officer explained his classification as follows: "[H]e's a violent offender, he's a repeat offender. He's a violent repeat offender.... He's now violent and he's also a repeat offender." The circuit court had this explanation prior to determining the sentence to impose on Mr. Booth and was acutely aware of the previous nonviolent offenses as well as the violence associated with the current offense, as evidenced in its sentencing order stating "this was an extremely violent offense and the Defendant has a prior felony conviction."

health. She was the primary caregiver for her infirm husband who was eighty-seven years of age at the time of the crime. Mrs. Schafer was also an active walker and frequently babysat her nine-year-old grandson. As a result of this crime, she has necessitated two surgeries, which included one to place pins in her hip and a second emergency surgery to repair her femur.[5] Prior to this crime, Mrs. Schafer was completely independent and able to ambulate without assistance. Since the crime and the resultant surgeries, Mrs. Schafer can no longer walk without the aid of a walker, and must hop on one leg even with the use of a walker, and she can no longer care for her husband or her grandson. Mrs. Schafer has not yet been able to return to her home from rehabilitation due to the accommodations that her home will now require to allow her access therein. The victim impact statement prepared by Mrs. Schafer and presented to the circuit court during the sentencing hearing explained as follows:

> This has turned my life completely up-side-down. I went from being an active helper for my husband (who has great difficulty walking as well as standing for any length of time) and an "always available" baby-sitter for my 9-yr. old grandson and enjoying many activities including going to the Wellness Center and walking anywhere I wanted, into a helpless person who can't even go to the bathroom without assistance. This has been a devastating blow to me and my family. We are faced with many expensive co-pays on our insurance coverage, making arrangements for help at home, and some renovations to our house to make it suitable for my return there. Also, I am facing an uncertain future in many ways. I suffer from anxiety for which I should be receiving treatment but unable to attend because of my confinement. I have literally been robbed of a large chunk of my remaining life.

Third, the probation officer's recommended sentence was further bolstered by Mr. Booth's prior criminal record. The nature of the current crime was violent, and his record shows a history of numerous felony and misdemeanor offenses. In 2004, Mr. Booth entered a no contest plea to a charge of petit larceny and was sentenced to thirty days in jail, suspended for six months of probation. In Ohio in 2005, Mr. Booth entered a guilty plea to misdemeanor theft and was sentenced to ninety days in jail with eighty-eight days suspended for two years of unsupervised probation. Mr. Booth entered into a plea agreement in 2006, wherein he pled guilty to two felony offenses of petit larceny in exchange for dismissal of three counts of entering without breaking into an automobile. He was sentenced to a one-year sentence for each count, to be served concurrently, and was released from the penitentiary after discharging his sentence. One month after his release, he was charged with the felony offense of delivery of a controlled substance within one thousand feet of a school.[6] Mr. Booth was on bond for this alleged offense at the time of the commission of the crime currently before this Court for review. The following month, in early 2006, Mr. Booth was charged with intimidation of a witness, which was dismissed a month later. Subsequently, in March 2006, Mr. Booth entered a guilty plea to driving with no operator's license and no insurance. The charges of failure to report an accident and failure to drive on the roadway were dismissed. He was sentenced to fifteen days in jail with credit for time served.

Fourth, the pre-sentence investigation report also relied on the deliberate manner in which this crime was committed as justification for the institution of a harsher penalty. The group was actively seeking to prey on an elderly person and sought their victims based on their classification within this vulnerable class of people. Mr. Booth attempted to rob

---

**5.** At the time of the sentencing hearing, the lower court was informed of the possibility of the need for a third surgery. The parties' briefs on appeal informed this Court that Mrs. Schafer had, in fact, undergone a third surgery, a total hip replacement. During the sentencing hearing, the treating doctor opined that the possibility of the need for this surgery was directly attributable to the original injury suffered as a result of the crime committed by Mr. Booth.

**6.** This case was pending disposition at the time of the underlying sentencing hearing for the relevant crime. However, the charge was later dismissed.

one elderly woman and when that attempt was thwarted, the group sought and found another elderly target in Mrs. Schafer.

Moreover, the fifth point relied on in the report of the probation officer contended that Mr. Booth had already been shown leniency in the lower court's acceptance of the plea agreement, which allowed the State to dismiss three counts pending against him. The final point set forth in the report reasoned that Mr. Booth's overall behavior was a significant factor in the recommended sentence. Mr. Booth's young age and the extensive criminal history he had already accumulated within that time worked against him. Further, he refused to find regular employment and, instead, chose to use illegal drugs every day. He committed crimes against the public to support his drug habit and had never sought treatment for his addiction. Based on all of the aforementioned reasons, the probation officer recommended a sentence of eighty years, explaining that Mr. Booth will be eligible for parole after serving one-fourth of the sentence, or twenty years, and that his sentence can be discharged after forty years.

On August 2, 2007, a sentencing hearing was held. At the sentencing hearing, Mrs. Schafer's orthopedic surgeon testified to a reasonable degree of medical certainty that the cause of the first fracture was "directly related to the fall [Mrs. Schafer] sustained in the assault." Further, the surgeon opined that the cause of, or need for, the second surgery "was directly related to the original injury." The doctor was asked "[s]o it's your opinion to a reasonable degree of certainty that all of the trauma and surgery that she had to have done on her hip and femur were all related to the robbery as to what Mr. Booth was convicted of?" The doctor responded "[a]bsolutely, yes, sir." [7] Counsel for Mr. Booth requested that the statutory minimum sentence of ten years be imposed, and moved the court to permit Mr. Booth to serve his time as part of the youthful offender program.

As a result of the facts of the case and the testimony presented at the sentencing hearing, the lower court stated that

[t]here's nothing about the facts of this case that warrant leniency. They're disturbing. They're serious. And I think to impose anything but a stiff sentence would send the wrong message and would severely diminish the seriousness of Mr. Booth's actions that day. Accordingly, I'm going to adopt the recommendation of the probation department and impose a sentence of 80 years in the West Virginia State Penitentiary.

Following the ruling from the bench, the lower court memorialized its rulings in an order entered December 3, 2007. Mr. Booth was re-sentenced on May, 23, 2008, for appeal purposes. In that order, the trial court's reasons were set forth as follows:

THEREUPON, the Court, based upon the representation of counsel and the record herein does accordingly

FIND that the Defendant is not a good candidate for probation or alternative sentence as this was an extremely violent offense and the Defendant has a prior felony conviction. The Court further

FINDS that the Defendant is [a] repeat violent offender who was on bond for another felony offense when the Defendant committed the First Degree Robbery of the victim in this matter. The Court further

FINDS that the impact that this crime had on the victim is substantial. The Court further

FINDS that the Defendant needs to be incapacitated for a substantial period of time to protect society.

Therefore, Mr. Booth was sentenced to eighty years in the penitentiary, with credit for time served. Mr. Booth now appeals to this Court.

## II.

### STANDARD OF REVIEW

■ On appeal to this Court, Mr. Booth argues that the length of his sentence imposed by the circuit court violates both state and federal constitutional law because the time period is impermissibly harsh and dis-

7. *See* note 5, *supra*.

proportionate to the crime committed. This Court has previously explained our standard of reviewing sentencing orders as follows: "The Supreme Court of Appeals reviews sentencing orders ... under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syllabus pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997). Mindful of this applicable standard, we will consider the arguments set forth by the parties.

## III.

### DISCUSSION

On appeal to this Court, Mr. Booth argues that the sentence of eighty years violates both state and federal constitutional law because the time period is impermissibly harsh and disproportionate to the underlying facts.[8] He avers that the sentence imposed shocks the conscience and offends fundamental notions of human dignity. To the contrary, the State contends that Mr. Booth's sentence, in light of the facts, does not shock the conscience. The State relies on Mr. Booth's previous criminal record, the manner in which he preyed upon a vulnerable class of society, and the violent nature of the current crime and its effect on the victim and her family.

At the outset, we note the general rule that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982). In the present case, the record does not suggest, and Mr. Booth does not argue,

that the trial court relied on any impermissible factors in arriving at his sentence. Instead, Mr. Booth maintains that his sentence both shocks the conscience and is disproportionate to the crime committed.

In the current case before this Court, the relevant charging statute sets no maximum sentence that the sentencing court must use as a ceiling in imposing a sentence for the crime of first degree robbery at issue herein.[9] This Court has previously entertained claims that sentences violate state and federal constitutional provisions against cruel and unusual punishment which provisions prohibit a sentence that is disproportionate to the nature of the offense. These claims are generally limited to sentences that have no maximum limit provided by statute, such as is the case with the relevant statute in the present appeal. In Syllabus point 4 of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981), this Court stated: "While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." In Syllabus point 8 of *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980), we recognized: "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'" Further, in Syllabus point five of *State v. Cooper*, 172

---

**8.** While not set forth as a separate assignment of error, contained within his argument is Mr. Booth's contention that he should have been sentenced as a youthful offender. It is a well-settled principle that "[c]lassification of an individual as a youthful offender rests within the sound discretion of the circuit court." *See State v. Allen*, 208 W.Va. 144, 157, 539 S.E.2d 87, 100 (1999). Further, when deciding whether to sentence a criminal defendant as a young adult offender, the circuit court should consider the defendant's "background and his rehabilitation prospects." *See State v. Hersman*, 161 W.Va. 371, 376, 242 S.E.2d 559, 561 (1978). During the sentencing hearing before the lower court, the court went through the significant impact

that this crime has had on the victim and stressed that it will continue to have a negative impact on her for the rest of her life. The circuit court judge went on to reason that "to impose anything but a stiff sentence would send the wrong message and would severely diminish the seriousness of Mr. Booth's actions that day." When reviewed under an abuse of discretion standard, we find that the circuit court did not abuse its discretion in the instant case in declining to sentence the appellant under the Young Adult Offenders Act. *See* W. Va.Code § 25–4–1, et. seq.

**9.** *See* note 3, *supra*.

W.Va. 266, 304 S.E.2d 851 (1983), we explained:

Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

The test set forth in *Cooper* was further explained as follows:

The first [test] is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981):

In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

*Cooper,* 172 W.Va. at 272, 304 S.E.2d at 857. As previously described by this Court, the second test charges that "a disproportionality challenge should be resolved by more objective factors which include the consideration of the nature of the offense, the defendant's past criminal history, and his proclivity to engage in violent acts." *State v. Broughton,* 196 W.Va. 281, 292, 470 S.E.2d 413, 424 (1996) (quoting *State v. Ross,* 184 W.Va. 579, 581–82, 402 S.E.2d 248, 250–51 (1990)).

Mr. Booth maintains that the sentence imposed upon him shocks the conscience, is excessive and disproportionate to the degree and character of his offense, and is disproportionate to the sentences imposed upon other individuals involved in this same crime. We disagree.

■ First, the eighty-year sentence imposed on Mr. Booth does not shock the conscience of this Court or society. Mr. Booth's crime was one of first degree robbery, wherein he and his co-defendants actively sought out one of the most vulnerable classes of society: the elderly. The purpose for robbing Mrs. Schafer was to steal money to advance yet another illegal act: the purchase and consumption of illegal drugs. In the commission of this crime, Mr. Booth's acts directly caused the victim, Mrs. Schafer, an elderly woman who was eighty-two years of age but who was otherwise healthy and independently mobile, to fall and break her hip. This act resulted in three surgeries to Mrs. Schafer and the premature loss of an independent life. This crime severely diminished the expectations of Mrs. Schafer for living the remainder of her life at home due to her inability to access her home in its current state as a result of her restricted mobility. Further, Mrs. Schafer's family also was negatively impacted in that she can no longer provide the care needed by her infirm husband and she can no longer babysit her grandson. Due to Mr. Booth's decision to prey on the elderly, coupled with the significant negative impact that his actions will continue to have on the victim and her family, the eighty-year sentence does not shock the conscience.

Second, the eighty-year sentence is not disproportionate when consideration is made of the nature of the offense, Mr. Booth's significant past criminal history, and the violence involved in this particular crime. As explained previously in this opinion, the nature of the current offense was violent and resulted in a substantial diminishment in the victim's ability to enjoy life and to participate to any degree in the activities of her pre-injury life. Further, Mr. Booth, at his young age, had already accumulated an extensive criminal history. While Mr. Booth argues that he was incorrectly labeled as a "violent repeat offender," we find this argument to be

without merit.[10] Moreover, we find the sentence imposed to be in line with other sentences upheld by this Court.[11]

■■ ■■ Mr. Booth's final argument is that his sentence is disproportionate to the sentences received by his co-defendants.[12] In Syllabus point two of *State v. Buck*, 173 W.Va. 243, 314 S.E.2d 406 (1984), we stated:

> Disparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse. If codefendants are similarly situated, some courts will reverse on disparity of sentence alone.

Applying this principle to the present case, we do not find any error in the fact that Mr. Booth received a harsher sentence than the other defendants. Mr. Booth was the prime mover in that he was the one who actively pursued the plan to prey on the elderly to steal money. Mr. Booth also was the one who attempted to obtain access, on at least three occasions, to Ms. Carney's home. Moreover, while both he and the juvenile male followed the victim, Mrs. Schafer, on the street, Mr. Booth was the one who pulled on her purse causing her to fall and resulting in her significant injuries. All of these actions took place while Mr. Booth was free on bond for the alleged commission of another felony.[13] His post-arrest conduct for his previous charges clearly evidences a lack of a desire to change or receive help. According-

10. *See* note 4, *supra*.

11. *See e.g., State v. Tyler*, 211 W.Va. 246, 565 S.E.2d 368 (2002) (per curiam) (upholding thirty year sentence for first degree robbery involving use of firearm); *State v. King*, 205 W.Va. 422, 518 S.E.2d 663 (1999) (approving defendant's eighty-four year sentence after breaking into elderly woman's home, threatening her with weapon, with previous criminal history); *State v. Mann*, 205 W.Va. 303, 518 S.E.2d 60 (1999) (per curiam) (affirming thirty-year sentence for robbing store clerk at gun point); *State v. Phillips*, 199 W.Va. 507, 485 S.E.2d 676 (1997) (per curiam) (upholding defendant's 140 year sentence after robbing fast food restaurant and threatening employees with fake pistol that appeared to be real); *State v. Woods*, 194 W.Va. 250, 460 S.E.2d 65 (1995) (per curiam) (approving thirty-six year sentence for robbery involving use of gun); *State v. Spence*, 182 W.Va. 472, 388 S.E.2d 498 (1989) (affirming sixty-year sentence for robbery involving use of knife); *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988) (upholding life sentence for robbery using gun that was discharged three times during crime); *State v. Brown*, 177 W.Va. 633, 355 S.E.2d 614 (1987) (approving sixty-year sentence for robbery using knife); *State v. Glover*, 177 W.Va. 650, 355 S.E.2d 631 (1987) (affirming seventy-five years for robbing victim, severely beating victim, and leaving her to die). *But cf. State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983) (overturning defendant's forty-year sentence due to defendant's young age, fact this was his first offense, and that probation officer recommended minimum sentence); *State v. Buck*, 173 W.Va. 243, 314 S.E.2d 406 (1984) (setting aside seventy-five year sentence for aggravated robbery because it was defendant's first crime of violence and defendant's remorse was genuine with an offer to pay restitution). While Mr. Booth argues that

his young age and the fact he used no weapon work in his favor, we disagree. The extensive criminal history compiled by Mr. Booth by such a young age shows his proclivity to commit crimes. Further, the fact he continued to commit crimes while on bond for previous crimes shows his propensity is not one that he has taken steps to alter. While we acknowledge that Mr. Booth carried no weapon, we agree with the State's position that his hands were his weapons in this case.

12. While there is scant information in the record regarding the sentences of Mr. Booth's codefendants, Mr. Booth offers information regarding his codefendants' sentences in his appeal brief to this Court. According to the proffer of counsel, Jessica Wood pled guilty to first degree robbery in the current case and had been convicted of previous felonies. The record illustrates that Ms. Wood remained in the car during the commission of the crime; however, it appears that she was the person directing the conduct of the other defendants. The probation officer recommended a sixty-year sentence for Ms. Wood, and the lower court imposed a fifty-year sentence in the penitentiary. The juvenile male's case was handled in the juvenile courts, but it was represented to this Court that he will receive no more than one year of incarceration due to his cooperation with the authorities and his testimony against Mr. Booth at the preliminary hearing. Jennifer Jordan entered a guilty plea to one count of conspiracy to commit robbery by information and was sentenced to one to five years in the penitentiary. Mr. Booth's sentence was the harshest of the defendants. Indeed, Mr. Booth's counsel represents that his sentence exceeded the other three defendants' combined sentences.

13. *See* note 6 and accompanying text, *supra*.

ly, we do not find that his sentence is disproportionate to the sentences received by his codefendants. There was no abuse of discretion by the circuit court in the imposition of Mr. Booth's sentence; therefore, the sentence will not be disturbed by this Court.

## IV.

### CONCLUSION

For the foregoing reasons, the May 23, 2008, order by the Circuit Court of Ohio County, sentencing Mr. Booth to eighty years in the state penitentiary is hereby affirmed.

Affirmed.