# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

October 18, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 12-0712** (Berkeley County 11-F-248)

**Ronald L. Shamburg,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Ronald Shamburg, by counsel Steven A. Greenbaum, appeals the order of the Circuit Court of Berkeley County, entered May 4, 2012, sentencing him to incarceration in the West Virginia Penitentiary upon the entry of his plea of guilty to: a determinate term of forty years for first-degree robbery; one to five years for conspiracy to commit robbery; and two to ten years for malicious assault. The State appears by counsel Cheryl K. Saville.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was arrested in the early morning hours of July 13, 2011, for the home invasion of Howard L. Strauss, who was severely beaten. Mr. Strauss identified petitioner—who had been employed to perform landscaping work for Mr. Strauss—and two other individuals as his attackers. Each individual confessed.

Petitioner, who was twenty-two years old at the commission of the crime, was indicted on one count each of: burglary, first-degree robbery, assault during the commission of a felony, conspiracy to commit a robbery, and malicious assault. He initially pled "not guilty," but subsequently entered into a plea agreement with the State, pursuant to which the charges for burglary and assault during the commission of a felony were dismissed. At his plea hearing, petitioner described the crime:

> We went there and we parked and then we all three went up to the door. [A female co-defendant, Jennifer Barnhart] was the one that knocked on the door and I was to the left-hand side of the door and [a male co-defendant, Brian Shamburg,] was to the right-hand side of the door.
>
> So when he opened the door, she asked to use the phone and when he let

her in, Brian went in behind her and that's when the [T]aser come into play, because after he got his phone he started [T]asering him and I hit him like a few times and then we just pretty much kept beating him, beating him, beating on him for nothing.

Somewhere along the line, the money come out of the house and I didn't see it.

. . . Yeah, there was some blood on his face and dripping off his face onto his floor. There was a good bit of blood around.

The State filed a written sentencing recommendation, recommending in part that petitioner serve twenty-eight years in prison for the conviction on the charge of first-degree robbery. At the sentencing hearing, Mr. Strauss read his victim impact statement, relating how petitioner and petitioner's co-defendants planned the attack, took advantage of his trust and physical limitations, and feigned an emergency to gain access to his home. He then told how upon entry they immediately used a Taser gun to immobilize him and repeatedly beat and kicked him. He said that one of his attackers tried to strangle him. He then explained that the bones under his eyes were fractured in the attack and that he temporarily lost sight and suffered blurred vision. He said one tooth was broken, requiring dental work, and he had numbness in his face. He also told the court that he continued to suffer psychological issues, and that he did not feel safe in his own home. Mr. Strauss had to drive himself to the hospital after the attack because his attackers took his cell phone and he had no means to contact emergency services.

At the conclusion of the sentencing hearing, the circuit court sentenced petitioner as noted above. This appeal followed. On appeal, petitioner asserts three assignments of error: that the circuit court failed to comply with the judicial disqualification provisions of Rule 17.01 of the West Virginia Trial Court Rules, thereby rendering the entry of his plea and the subsequent sentence void; that the circuit court placed excessive emphasis on the victim impact statement; and that the sentence of forty years in prison for first-degree robbery violates the West Virginia constitutional prohibition of cruel and unusual punishment because it is disproportionate to the nature of the offense. This Court reviews sentencing orders "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997).

First, we address petitioner's argument that the circuit court failed to comply with Rule 17.01 of our Trial Court Rules, which provides in part:

Upon a proper disqualification motion, as set forth in this rule, a judge shall be disqualified from a proceeding only where the judge's impartiality might reasonably be questioned in accordance with the principles established in Canon 3(E)(1) of the Code of Judicial Conduct.[1]

---

[1]Canon 3(E)(1) provides:

E. Disqualification.

2

(a) In any proceeding, any party may file a written motion for disqualification of a judge within thirty (30) days after discovering the ground for disqualification. The motion shall be addressed to the judge whose disqualification is sought and be filed with the circuit clerk at least seven (7) days in advance of any date set for a non-trial proceeding in the case or at least twenty-one (21) days in advance of any trial date set in the case . . . .

(b) Upon the judge's receipt of a copy of such motion, regardless of whether the judge finds good cause and agrees to the disqualification motion or not, the judge shall:

(1) proceed no further in the matter . . . .

Petitioner's motion for disqualification was filed in the circuit court on January 13, 2012, on the ground that the victim was a former Berkeley County Commissioner and "upon information, [petitioner] believes that each of the [j]udges in this [j]udicial [c]ircuit previously had regular and recurring contact with Mr. Strauss, by virtue of his former position as [c]ounty [c]ommissioner and [p]resident of the County Commission of Berkeley County. . ." Petitioner subsequently entered his plea agreement with the State and notified the court that he wished to withdraw his motion for disqualification so the court could take his plea. The court set a hearing

---

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;
 (b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it;
 (c) the judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or is a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the proceeding;
 (d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
 (i) is a party to the proceeding, or an officer, director or trustee, of a party;
 (ii) is acting as a lawyer in the proceeding;
 (iii) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding;
 (iv) is to the judge's knowledge likely to be a material witness in the proceeding.

3

on petitioner's change of plea, and it began the hearing by informing the parties that it had received from defense counsel a letter withdrawing the motion for disqualification.[2] Defense counsel confirmed that the motion for disqualification had been filed prophylactically, and the court said, "All right. Unless I receive something in writing stating otherwise, I'll assume it's remaining withdrawn . . . as we move forward."

Under these facts, we cannot say that the circuit court abused its discretion in proceeding to accept petitioner's guilty plea. We have said,

> [a]s a general rule, an *unconditional* plea of guilty or *nolo contendere*, intelligently and voluntarily made, operates as a waiver of all nonjurisdictional defects and bars the later assertion of constitutional challenges to pretrial proceedings. Although a defendant may still challenge the sufficiency of the indictment or other defects bearing directly upon the State's authority to compel the defendant to answer to charges in court, claims of nonjurisdictional defects in the proceedings, such as unlawfully obtained evidence and illegal detention, generally will not survive the plea.

*State v. Lilly*, 194 W.Va. 595, 605–06, 461 S.E.2d 101, 111–12 (1995) (internal citations omitted). In taking the plea, the trial court engaged petitioner in a lengthy and meaningful colloquy, during which the following transpired:

| THE COURT: | Do you further understand that you will be giving up any claim that this [c]ourt, the [j]udge, me, you will be giving up any claim that I have not treated you fairly? |
|---|---|
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you understand that if you persist in your pleas of guilty and the same are accepted by the [c]ourt, that you will be just as convicted of the crimes you plead guilty to as if a jury had returned lawful verdicts of guilty against you? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | However, if you pursue in your right to have a trial and you are convicted, there could be different grounds for appeal. On the other hand, if you are convicted on your pleas of guilty, your right to appeal those convictions will be much more limited. Do you understand? |

---

[2]The motion for disqualification was not transmitted to the Chief Justice of this Court.

THE DEFENDANT:        Yes, sir.

The record thus demonstrates that the plea was intelligently and voluntarily made. We need not consider, however, petitioner's claim that the court was divested of jurisdiction upon the filing of the motion for disqualification because the court took no further action in the case until accepting withdrawal of the motion.[3] Though petitioner argues that Rule 17.01 absolutely prohibits a circuit court judge from proceeding once a motion is filed, it is disingenuous for petitioner to effect the withdrawal of his own motion by representing to the court that the motion was the product only of "an abundance of caution," then call "foul" upon imposition of the sentence. We recognize, of course, that a jurisdictional defect, if one exists, cannot be waived. *State v. Tommy Y., Jr.*, 219 W.Va. 530, 637 S.E.2d 628 (2006) (*citing* Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure*, p. I–687 (1993)). However, we view petitioner's withdrawal as an acknowledgment that there was an insufficient basis for the motion when filed, particularly because there is no evidence in the record of an actual conflict of the presiding circuit court judge. Indeed, the motion suggested that "each of the [j]udges" in the circuit knew the victim well and were "concerned with being re-elected to the bench by the same voting populace which elected Mr. Strauss to his former position." In light of the lack of support for the motion to disqualify, we find that the error, if any, in permitting petitioner to withdraw the motion, was harmless. *See Shenandoah Sales & Service, Inc. v. Assessor of Jefferson County*, 228 W.Va. 762, 772, 724 S.E.2d 733, 743 (2012).

We turn to the second assignment of error, in which petitioner argues that the circuit court placed undue emphasis on Mr. Strauss's victim impact statement. The circuit court was obligated to consider the statement to some degree. West Virginia Code § 61-11A-3(a) provides as follows: "In every case in which a presentence report is ordered by the court, such presentence report shall contain a victim impact statement unless the court orders otherwise, if the defendant, in committing a felony or misdemeanor, caused physical, psychological or economic injury or death of the victim." The statement is statutorily required to include "a description of the nature and extent of any physical or psychological injury suffered by the victim as a result of the offense . . . ." *See* W.Va. Code § 61-11A-3(b). We perceive no evidence that the degree of consideration exceeded that contemplated by our statute.

As with his first assignment of error, petitioner supports this second assignment of error, in part, with the argument that the circuit court displayed unsuitable "sensitivity" to the victim. But the transcript of the sentencing hearing belies this argument. The court explained that it had taken into consideration statements of petitioner's former middle school teacher, petitioner's mother, and Dr. Edward Grove, a retired minister who indicated that petitioner was a good

---

[3]In declining to address this question, we also will not consider whether the motion was of any effect, given that it was likely untimely. Rule 17.01 requires that "any party may file a written motion for disqualification of a judge within thirty . . . days after discovering the ground for disqualification." The State charges, and petitioner does not dispute, that petitioner was aware of his victim's status as a former county commissioner as early as September of 2011. The motion to disqualify was not filed until January of 2012. Petitioner argues that the time standard of Rule 17.01, because it employs the word "may," is discretionary. He does not acknowledge the more-likely possibility that it is the filing of the motion itself that is discretionary, but the time limit, clearly set out in the rule, is firm.

5

candidate for rehabilitation. The court also emphasized a probation officer's opinion that petitioner had shown no remorse for his actions. And while the court did refer to some statements made by Mr. Strauss, the court focused on the circumstances of the crime, not the opinion or recommendation of the victim. The details provided by Mr. Strauss were consistent with the admission offered by petitioner at the plea hearing: Petitioner and his co-defendants planned to rob Mr. Strauss, took advantage of his willingness to assist after they manufactured a fictitious emergency, then attacked their victim with a Taser gun and beat him "unmercifully." Petitioner argues that Mr. Strauss provided the court with "misinformation," but the court relied on the investigating state trooper's description of the "large amount of blood" found throughout the victim's home, as well as the "graphic and compelling" photographs taken immediately after the attack. Furthermore, though petitioner disputes the characterization that his victim was "left for dead," it is undisputed that the attackers took their victim's phone, leaving him unable to call for help. It is apparent on the face of the record that the circuit court properly focused upon the sentencing criteria and the nature of the crime, and did not place excessive emphasis on the victim impact statement.[4]

Finally, we address petitioner's claim that his sentence for first-degree robbery was cruel and unusual in that it was disproportionate to the crime he committed. In Syllabus Point 8 of *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980), we recognized: "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'" In Syllabus Point 4 of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981), this Court stated: "While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Inasmuch as petitioner challenges his sentence for first-degree robbery, and that charging statute does not affix a maximum limit, we consider whether the punishment "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. . ." thereby violating the applicable constitutional provision.[5] *State v. Booth*, 224 W.Va.

---

[4]Petitioner does not assign as error the circuit court's denial of his motion for bond modification, but he does devote a significant portion of his brief to the hearings and subsequent order addressing that motion. To the extent that petitioner relates those events as evidence of bias, we find none, and we note that the court actually afforded petitioner two hearings and careful consideration before denying the motion. This crime was shocking, and it was not unreasonable for the court to order a probation suitability report or ultimately find that a $105,000, cash-only bond was not excessive.

[5]The relevant portion of the charging statute states as follows:

(a) Any person who commits or attempts to commit robbery by: (1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first

6

307, 314, 685 S.E.2d 701, 708 (2009).

The forty-year sentence neither shocks the conscience nor is disproportionate given the nature of the offense. Petitioner attempts to differentiate himself from other violent offenders that have come before this Court (*See Booth*, 224 W.Va. at 314 n.11, 685 S.E.2d at 709 n.11) by arguing that he does not have an extensive criminal history, that his robbery offense was not committed in combination with "other serious felony offenses," and that he did not use a firearm. We find these arguments unpersuasive in light of the cold and calculating nature of petitioner's actions that was apparent to the circuit court. Petitioner and his cohorts planned a robbery of an individual who had given petitioner employment. They concocted a scheme wherein they preyed upon the victim's willingness to provide help, and forced their way into his home in the middle of the night. As the circuit court pointed out, the three easily could have restrained the victim, but instead repeatedly attacked him with a Taser gun and savagely beat him. Petitioner himself told the court, ". . . then we just pretty much kept beating him, beating him, beating on him for nothing." In the end, petitioner and the others left their victim bloodied on the floor of his own home, with lasting physical and psychological impairment, taking with them his only means of calling for help. It was not unreasonable for the circuit court to conclude that petitioner left his victim for dead.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 18, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years.

W.Va. Code § 61–2–12(a) (2000) (Repl. Vol. 2010).

7