# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0456** (Kanawha County 18-F-417 and 18-M-102)

**Russell Ray Slater,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Russell Ray Slater, by counsel J.A. Curia III, appeals the amended sentencing order of the Circuit Court of Kanawha County, entered on June 1, 2020, sentencing him to an aggregate of more than 100 years of imprisonment and confinement in a regional jail upon his conviction of burglary by breaking and entering, first-degree robbery, assault during the commission of a felony, use or presentment of a firearm during the commission of a felony, and possession of a firearm by a prohibited person. Petitioner also appeals the circuit court's order, entered on the same date, denying his motion for the reduction of his sentence. Respondent State of West Virginia appears by counsel Patrick Morrisey and William E. Longwell.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

I.

Mr. Slater asserts five assignments of error in his criminal conviction: 1) the circuit court failed to find that the jury verdict was based on insufficient evidence and grant appropriate relief; 2) the circuit court erred in upholding the magistrate court's probable cause finding despite error in the preliminary hearing; 3) the circuit court erred in denying Mr. Slater's motion to suppress an out-of-court "statement" that he gave to a media outlet; 4) the circuit court erred in denying a motion to dismiss based on a lengthy delay in the production of Mr. Slater's trial transcript; and 5) Mr. Slater received an excessive criminal sentence in violation of his constitutional rights, and the circuit court erred in denying his motion for reduction of sentence.

II.

The standard of review for this initial discussion, concerning the sufficiency of the evidence supporting the conviction, is explained:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

The evidence at trial showed that Mr. Slater violently attacked a sixty-five-year-old woman in her home in April of 2018, then left the home with the victim's purse, jewelry box, and .22 caliber gun. Before leaving the home, he struck his victim in the head multiple times with a crowbar that he had earlier used to pry open the victim's door; told her, "I'm going to kill you b— h[;]" and used her own firearm to threaten her. The victim described her attacker as a tall, skinny male with "dark" eyes. She told police that he wore a black jacket with gray sleeves and that he drew the hooded jacket tightly around his face.

Police seized the victim's firearm from an individual near Mr. Slater's home, and the individual told police that Mr. Slater told him to take the firearm from the home. Police then executed a search warrant on Mr. Slater's home and found two of the victim's rings in his pocket. Officers retrieved a crowbar from a lot near the victim's home and learned that Mr. Slater's DNA was found on it. Mr. Slater's DNA also was lifted from a doorknob in the victim's home. At Mr. Slater's preliminary hearing, the victim identified Mr. Slater as the attacker.

Mr. Slater challenges the evidence on the grounds that the victim's statements about the attacker's hooded face indicated that she was unable to see her attacker's features and her identification of Mr. Slater was thus flawed; the victim identified Mr. Slater after seeing him in prison attire at the preliminary hearing; and the police investigation was substandard. He argues, for example, that though police recovered the DNA-carrying crowbar outside of the victim's home, the absence of the victim's blood renders the crowbar inapplicable to the investigation. However, Mr. Slater has not challenged the admissibility of any of the evidence he describes (except for the victim's identification of him) and our review of the trial evidence wholly establishes that a reasonable trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt.[1] "When a case involving conflicting testimony and circumstances has been

---

[1] Mr. Slater's criticisms of the identification of him are not troubling. He argues that the victim told police that her attacker's eyes are dark, but his are blue; however, the victim testified at trial that she was referring to the darkness surrounding his eyes, not the color. She also clarified that though her attacker drew his hood tightly around his face, his features were visible. The victim told the police that her attacker stood six-foot tall; Mr. Slater is six-foot tall. The victim testified that she was confident about the height of her attacker because her husband is six-foot tall.

fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it." Syl. Pt. 4, *Laslo v. Griffith*, 143 W. Va. 469, 102 S.E.2d 894 (1958). Mr. Slater has proffered no reason that the evidence on which his conviction is based should be set aside, and we find no error.

III.

Having determined that the evidence was sufficient to support the criminal conviction, we turn to Mr. Slater's assertion that the magistrate court judge terminated the preliminary hearing without permitting him to cross-examine the victim after she identified him as her attacker. Prior to his criminal trial, Mr. Slater filed a motion to suppress the victim's identification of him. In that motion, he stated:

> Also, said prelim was not a "fair" hearing under the meaning of the laws of the State of West Virginia, due to the fact that at the conclusion of the [S]tate's direct examination of their alleged victim, and over [Mr. Slater's] objection, [the magistrate court judge] summarily and suddenly terminated the hearing, finding . . . probable cause, prior to [Mr. Slater] or his counsel being provided the opportunity to cross examine the witness, or to call any witnesses in his own defense.

Mr. Slater requested no relief other than the suppression of the victim's identification of him. Following a hearing conducted on the motion of February 22, 2019, the circuit court entered an order denying the motion.

We have held that a criminal defendant is entitled to counsel at a preliminary hearing when one is conducted. Syl., *State v. Stout*, 172 W. Va. 763, 310 S.E.2d 695 (1983). However, we have consistently recognized that there is no state or federal constitutional entitlement to a preliminary hearing. Syl. Pt. 1, *State ex rel. Rowe v. Ferguson*, 165 W.Va. 183, 268 S.E.2d 45 (1980). Nevertheless, according to Rule 5 of the West Virginia Rules of Criminal Procedure, a criminal defendant is entitled to a preliminary hearing unless he or she chooses to waive it. When such a hearing is conducted, the scope is narrow:

> A preliminary examination conducted pursuant to Rule 5.1 of the West Virginia Rules of Criminal Procedure serves to determine whether there is probable cause to believe that an offense has been committed and that the defendant committed it; the purpose of such an examination is not to provide the defendant with discovery of the nature of the State's case against the defendant, although discovery may be a by-product of the preliminary examination.

Syl. Pt. 1, *Desper v. State*, 173 W. Va. 494, 318 S.E.2d 437 (1984). "The magistrate at the preliminary examination has discretion to limit such testimony to the probable cause issue, and the magistrate may properly require the defendant to explain the relevance to probable cause of the testimony the defendant seeks to elicit." *Id.* at Syl. Pt. 2, in part. It is apparent, then, that the magistrate court judge has vested authority to limit testimony at a preliminary hearing.

In the case before us, a preliminary hearing was initiated but stopped earlier than Mr. Slater

3

ostensibly desired. Mr. Slater sought narrowly-defined relief—the suppression of the victim's identification of him—in a pretrial motion filed with the circuit court. The circuit court denied the motion, but its rationale for doing so is unclear because the parties neither included the transcript of the circuit court's February 22, 2019, hearing on the motion to suppress nor described the hearing. Rule 7(d) of the West Virginia Rules of Appellate Procedure requires that "petitioner shall prepare and file an appendix containing . . . '[m]aterial excerpts from official transcripts of testimony or from papers in connection with a motion[,]' and '[o]ther parts of the record to which the parties wish to direct the Court's attention.'" Additionally, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." Rule 10(c)(7) further provides that "[t]he Court may disregard errors that are not adequately supported by specific references to the record on appeal." We have held that

> [a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. Pt. 4, *State v. Myers*, 229 W. Va. 238, 728 S.E.2d 122 (2012) (citations omitted). We must presume that the circuit court correctly weighed the preliminary hearing considerations described above, including those that permit a magistrate court judge to limit the scope of inquiry, because we have been presented with no evidence to the contrary. Consequently, we find no error in the circuit court's denial of Mr. Slater's motion to suppress the victim's identification of him at the preliminary hearing.

IV.

In his second assignment of error, Mr. Slater discusses a recorded interview that he gave to a reporter for a local news program while he was confined in a regional jail awaiting his preliminary hearing. In the interview, he claimed, "I don't do that to people. I help people. I don't hurt people." He also said, "I don't really remember [the incident]. I think I did . . . I mean, if I did, I'll be straight up and tell them I did[.]" He explained that if he had committed the home invasion, he would have done so because he was addicted to heroin.

Prior to his trial, Mr. Slater filed a motion asking the circuit court to "suppress" this statement on the ground that regional jail officials allowed this interview to be recorded in violation of his constitutional rights. The circuit court denied the motion. Mr. Slater argues that the circuit court erred in denying his motion because the statement was facilitated by state officials and not voluntary. When reviewing the denial of a motion to suppress, we are to construe all facts in favor of the State and give "particular deference" to the findings of the circuit court. Syl. Pt. 1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). Any factual findings are reviewed for clear error. *Id*. Mr. Slater argues that the voluntariness of his statement to the reporter was "not established" and suggests that the voluntariness was compromised by an altercation with other inmates that occurred the day prior to the interview. Mr. Slater, however, has proffered no evidence suggesting that he was coerced into participating in the interview. Though he was confined in a state regional

4

jail, there is no evidence that any state actor compelled the interview. We, therefore, find no error.

V.

In his fourth assignment of error, Mr. Slater argues that he is entitled to be discharged from confinement by writ of habeas corpus because the court reporter acted in "extraordinary dereliction of duty" and delayed production of the transcripts of his trial for approximately twenty-two months. Soon after Mr. Slater filed his notice of appeal with this Court, we remanded his case to the Circuit Court of Kanawha County for a determination about the availability of trial transcripts. On remand, the circuit court ascertained that the transcripts were available and filed, but Mr. Slater requested dismissal of the indictment or remand for a new trial. The circuit court denied this request for relief, noting that the matter was on remand from this Court and the circuit court's jurisdiction was limited.

> When this Court remands a case to the circuit court, the remand can be either general or limited in scope. Limited remands explicitly outline the issues to be addressed by the circuit court and create a narrow framework within which the circuit court must operate. General remands, in contrast, give circuit courts authority to address all matters as long as remaining consistent with the remand.

Syl. Pt. 2, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 591 S.E.2d 728 (2003). Our order of remand, entered on January 28, 2021, specified that the circuit court was "to determine whether the requested transcripts may be prepared or are unavailable." The framework was narrow, and the circuit court did not err in finding it lacked the jurisdiction to entertain Mr. Slater's motion.[2]

---

[2] Mr. Slater does not address the court's finding that it lacked jurisdiction, asserting that the circuit court erred when it found that the transcript was available and there was no impediment to appeal. He cites our holding in Syllabus Point 2 of *State ex rel. Kisner v. Fox*, 165 W. Va. 123, 267 S.E.2d 451 (1980):

> The failure of the State to provide a transcript of a criminal proceeding for the purpose of appeal, absent extraordinary dereliction on the part of the State, will not result in the release of the defendant; however, the defendant will have the option of appealing on the basis of a reconstructed record or of receiving a new trial.

Were this case before us on the merits of Mr. Slater's argument, we would find that this is not a case of extraordinary dereliction, though possibly a case of poor communication. The court reporter (now retired) testified that the trial transcript was prepared in 2019 after counsel indicated that he planned to file an appeal but that she did not receive a formal request or informal inquiry about the transcript until February of 2021 when the assistant prosecuting attorney asked for it. The transcript was prepared and was in the possession of Mr. Slater's counsel for the preparation of his appeal. This situation is distinct from *Kisner*, where the trial transcript was not reproducible. Mr. Slater has suffered no prejudice that would merit the extraordinary relief he proposed.

VI.

Finally, we address Mr. Slater's assertion that the circuit court erred in denying a motion for reduction of sentence that he filed after his sentencing hearing. We have explained:

> In reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules of Criminal Procedure, we apply a three-pronged standard of review. We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review.

Syl. Pt. 1, *State v. Head*, 198 W. Va. 298, 480 S.E.2d 507 (1996).

The circuit court sentenced Mr. Slater to the consecutive terms described above, including the term of one-hundred years for first-degree robbery. Mr. Slater argues that his sentence is disproportionate to the crimes he committed because "[h]ad [he] been convicted of second-degree murder . . . the statutory maximum he could have received was [forty] years." He argues for a "logical inference" that he did not know anyone was home when he entered the home at approximately 10 a.m. on a Sunday morning and argues that the victim's injuries were not life-threatening. We are not moved. No, Mr. Slater did not commit the single felony act of murdering his victim. Instead, he committed a parade of offenses that culminated in his beating a sixty-five-year-old victim with a crowbar while terrorizing her at gunpoint and promising to kill her before absconding with a few of her personal effects. Considering the heinous terror inflicted on the victim, we cannot say that Mr. Slater's punishment "shocks the conscience and offends fundamental notions of human dignity" to warrant prohibition of the penalty. *See* Syl. Pt. 5, in part, *State v. Booth,* 224 W. Va. 307, 685 S.E.2d 701 (2009) (citation omitted). Accordingly, we find no error in the circuit court's denial of Mr. Slater's motion for reduction of sentence.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 26, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

**NOT PARTICIPATING:**

6

Justice C. Haley Bunn